## Richmond

WILLIAM T. GRASTY, EXECUTOR IN ACCORDANCE WITH THE WILL OF ROBERT VANDERPOEL CLARK, JR., DECEASED, ETC. v. N. HOLMES CLARE, EXECUTOR IN ACCORDANCE WITH THE WILL OF ROBERT VANDERPOEL CLARK, JR., DECEASED, ETC., AND ELIZABETH D. CLARK AND SUZANNE D. CLARK.

WILLIAM T. GRASTY, EXECUTOR IN ACCORDANCE WITH THE WILL OF ROBERT VANDERPOEL CLARK, JR., DECEASED, ETC. v. SUZANNE D. CLARK, ELIZABETH D. CLARK AND N. HOLMES CLARE, EXECUTOR IN ACCORDANCE WITH THE WILL OF ROBERT VANDERPOEL CLARK, JR., DECEASED, ETC.

June 16, 1969.

Record Nos. 6858 and 6859.

Present, All the Justices.

*Bolling R. Powell, Jr.* (*George A. Horkan, Jr.; Powell, Horkan & Powell*, on brief), for appellant in Record Nos. 6858 and 6859.

*Thomas V. Monahan* (*John S. Battle, Jr.; William R. Waddell; Hall, Monahan & Engle; McGuire, Woods & Battle*, on brief), for appellees in Record Nos. 6858 and 6859.

BUCHANAN, J., delivered the opinion of the court.

Record No. 6858

Robert Vanderpoel Clark, Jr., a domiciliary and resident of Fauquier County, Virginia, died testate at age twenty-four on October 4, 1964. At time of his death testator owned real and personal property located in Virginia, valued at between $300,000 and $400,000, and intangible personal property, the evidence of which was located in New York, valued at between $19,000,000 and $26,000,000.

His will, dated January 26, 1962, provided, in parts pertinent to this suit:

"FIRST: (A) I appoint my counsel, N. HOLMES CLARE and THE CHASE MANHATTAN BANK a corporation organized under the laws of the State of New York, the Executors of this

Will for all my assets, with the exception of my Virginia assets which shall consist only of any real property which I may own in the State of Virginia, any tangible personal property situated in that State, and any funds on deposit in banks located in Virginia.

"(B) For my Virginia assets I appoint as Executors my counsel N. HOLMES CLARE and WILLIAM T. GRASTY. * *
* * *

"SECOND: I direct my Virginia Executors, at such time or times and at such prices as they consider reasonable, to sell my Virginia real estate which is not specifically devised and all tangible personal property located in Virginia and not specifically bequeathed, and after first paying all my debts for which claims may be filed and allowed in the State of Virginia and all expenses of administration (not including any estate or inheritance taxes) in that state, to transmit the net proceeds of sale and any net balances on deposit in banks located in Virginia to my New York Trustees.
* * *

"NINETEENTH: Any and all legacy, transfer, inheritance, estate, succession or death taxes, State or Federal based or imposed upon or measured by property that passes by my Will, or otherwise, shall be paid out of the principal of my residuary estate (referred to in Paragraph Sixth of this Will) and shall not be apportioned. Whenever my Executors or Trustees are given a choice of dates as of which to value property for Federal estate tax purposes, they may elect such date as they in their uncontrolled discretion deem advisable regardless of the resulting effect on other provisions of this Will.

"TWENTIETH: I appoint as Trustees of the trusts created herein my counsel N. HOLMES CLARE and THE CHASE MANHATTAN BANK a corporation organized under the laws of the State of New York * *.

"TWENTY-FIRST: My individual Trustee is a resident of the State of New York, my corporate Trustee is in the State of New York, my intangible personal property is in the State of New York, and I hereby elect and direct that this Will and the testamentary dispositions in it and the trusts set up shall be construed, regulated and determined by the laws of the State of New York, and that this Will be offered for probate in the State of New York."

The will was first admitted to probate in the Surrogate's Court,

New York County, New York, on October 16, 1964, and N. Holmes Clare and The Chase Manhattan Bank qualified as executors and trustees thereunder. On March 15, 1965, the will was admitted to probate in the Circuit Court of Fauquier County, Virginia, and Clare and William T. Grasty, a resident of Fauquier County, qualified as executors. Virginia probate taxes based on an estate of estimated value of over $19,000,000 were paid.

Testator died without issue. By his will he established two trusts of which his widow, Elizabeth D. Clark, and his mother, Suzanne D. Clark, both domiciled in and residents of Virginia, were the immediate beneficiaries.

On October 13, 1965, Clare, as "Executor in accordance with the will * * and the Order of this Court entered March 15, 1965," filed a suit in equity against Grasty, executor, and testator's widow and his mother.

Clare's bill of complaint alleged that under the will the powers, responsibilities and authority of the Virginia executors (himself, in that capacity, and Grasty) extended only to the Virginia assets as defined in paragraph (A) of Article FIRST of the will, and that the Virginia executors were limited thereby to performing such acts as might be required to carry out the provisions of Article SECOND of the will. The bill further alleged that Grasty had refused to accept this limitation; that he had asserted that he had title to and responsibility for the whole personal estate of decedent, wherever located; that he had refused to cooperate with Clare, as Virginia co-executor, and with the New York executors, thereby interfering with the orderly administration of the estate and making the administration more expensive and burdensome.

The bill prayed that the will be construed and that the proper construction be that the powers, responsibilities and authority of the Virginia executors extend only to the Virginia assets as defined in the will and that the Virginia executors are limited to performing such acts as might be required to carry out the provisions of Article SECOND of the will.

Grasty, executor, filed his answer and cross-bill, the cross-bill alleging that he had set about to discharge his fiduciary duties in Virginia under the will and under Virginia statutes; that he had sought Clare's cooperation and collaboration which was refused. He alleged that Clare had refused to cooperate with him in filing an inventory of the estate by refusing to include in such inventory an itemized

schedule of the intangible personal property located in New York; that Clare had refused to cooperate in joint preparation of various Virginia income and inheritance tax returns and Federal income and estate tax returns; that testator's widow had filed a renunciation of the will and election to take her statutory share of testator's estate, but Clare, executor, was seeking to deny her this right.

The cross-bill prayed that the will and pertinent statutes be construed and that proper construction of the will be that Grasty and Clare were required to carry out jointly their fiduciary duties in Virginia and they must jointly prepare and file the inventory of the estate and the various tax returns, State and Federal; that they must jointly marshal and deliver to testator's widow her statutory share of testator's estate including her share of the intangible personal property located in New York.

Testator's mother filed an answer joining the prayer of Clare's bill of complaint. Testator's widow also filed an answer joining the prayer of Clare's bill and praying that the relief sought by Grasty's cross-bill be denied. She sought an adjudication that the duty of the Virginia executors to marshal and deliver her share of the estate pursuant to her renunciation of the will was limited to the Virginia assets; that the duty to deliver her share of the other assets was in the New York executors.

After various other pleadings were filed, a pretrial conference was held and on May 24, 1966, the court entered a pretrial order, stating the issues to be decided in the case as follows:

"What was the intent of the testator * * in appointing New York executors to handle his New York estate and appointing Virginia executors to handle or settle his Virginia estate as spelled out in the Will?"

"If the Court determines that the testator * * desired that his New York assets, set forth in his Will, be administered, handled only by his New York executors, and that his Virginia assets be administered only by the Virginia executors, as set forth in the Will; is there any Virginia statute or law that would prevent that policy being carried out in all phases of the administration of the estate?"

Upon the pleadings, pretrial order which also contained various stipulations, exhibits, depositions and argument and briefs of counsel,

on November 15, 1966, the court entered its decree, embodying certain rulings made earlier. Concerning the two issues stated above, the decree summarized the court's holding thus:

> " * * [T]he Court being of the opinion that it was the intention of the testator * * that all of his assets be administered in, and under the law of, the State of New York by N. Holmes Clare and The Chase Manhattan Bank as his executors qualified in New York, except his Virginia assets as defined in Article FIRST (A) of the Will and that the said testator intended that the Complainant [Clare] and the Respondent [Grasty] administer such Virginia assets only; that there is no statute or law of the Commonwealth of Virginia which prohibits such intention from being carried out; and that the relief sought by the Respondent in his Cross-Bill should be denied * *."

The court held that it was the testator's intention that Clare and The Chase Manhattan Bank qualify as executors in New York and there administer all of his assets except those assets referred to in the will as Virginia assets; that Clare and Grasty qualify as executors in Virginia and have powers, responsibilities and authority extending only to the Virginia assets and to the performance of such acts as might be required to carry out Article SECOND of the will.

The court further held that the rights of testator's creditors and the rights of Virginia and of the United States would not be adversely affected by carrying out testator's intention; that State and Federal tax returns had been filed, all taxes shown on the face of the returns as due had been paid, and the returns and payments had been accepted by tax authorities notwithstanding Grasty's objections.

The court also found that the Virginia executors had no responsibility to attempt to obtain transfer to Virginia of the assets being administered in New York; that Grasty was not responsible to the estate or to the beneficiaries for the preparation and filing of tax returns or for the payment of taxes except as to the disbursement of funds before taxes were paid; that testator's widow opposed all claims of Grasty that he is responsible for marshaling and delivering to her any assets of the estate except the Virginia assets, and that she has relieved Grasty of any responsibility for any but the Virginia assets.*

---

*After litigation in the courts of New York, in which the New York executors opposed the widow's claim that she was entitled to renounce the provisions made

To this decree granting the relief prayed for by Clare's bill of complaint and denying the relief sought by Grasty in his cross-bill, Grasty was granted an appeal.

His primary contention is that under testator's will and under the law of Virginia he, as "resident domiciliary co-executor," has authority and responsibility to administer the whole personal estate of testator, including the intangible personal property which testator held in New York.

The provisions of testator's will previously quoted make it clear that he did not intend such a result. The will, drawn by testator's New York attorney Clare and in Clare's possession at time of testator's death, shows that testator intended that most of the administration of his estate would occur in New York by the executors appointed by the will to serve there. Clare and The Chase Manhattan Bank were named as executors "for all my assets" except the Virginia assets which were then specifically described. The Virginia executors were to sell all the Virginia assets not specifically devised or bequeathed and to transmit the net Virginia assets to the New York trustees to which testator left his net estate for the benefit, initially, of his widow and his mother.

Testator specifically provided that the will and trusts established thereunder should be "construed, regulated and determined by the laws of the State of New York," and that his intangible personal property was in New York.

The trial court correctly held that testator intended that the bulk of his estate should not be administered in Virginia.

It should be remembered that it is not creditors or beneficiaries who are seeking an adjudication that would frustrate testator's intention, but one of the executors appointed by his will and given specific duties thereby.

Virginia co-executor Grasty asserts that because testator was domiciled in Virginia at time of his death, even if he intended that his estate would be administered primarily in New York, effect should not be given to this intention.

He relies on application of the common law maxim of *mobilia sequuntur personam*, arguing that all intangible personal property has its situs at the domicile of the testator regardless of where the physical

for her in the will and was entitled to receive her statutory share under Virginia law, in 1968 the Court of Appeals of New York held that she was entitled to her Virginia statutory share. See *In Re Estate of Clark*, 21 N.Y. 2d 478, 236 N.E. 2d 152.

evidence of it may be found, and arguing therefrom that title to testator's large personal estate in New York passed to his personal representative in Virginia, that is, himself and Clare, as Virginia co-executors. He further argues that Code § 64-131 [now Code § 64.1-139] providing "Every personal representative shall administer, well and truly, the whole personal estate of his decedent" requires this conclusion.

While primary administration of the personal estate of a decedent generally is had in the courts of the State of his domicile at death, portions of a decedent's personal estate are frequently administered in another State. 31 Am. Jur. 2d, Executors and Administrators, § 680, p. 282. "Although one administrator or executor may be termed principal, and the other ancillary, each in fact is principal, because each is independent of the other, and derives his power from equally independent sources." *Moses* v. *Hart*, 66 Va. (25 Gratt.) 795, 811.

There are well-recognized exceptions to the general rule that the situs of intangibles is at the domicile of the owner and for certain purposes property may acquire a situs elsewhere than at the domicile of the owner. *Dominion Bank* v. *Jones*, 202 Va. 502, 504-5, 118 S.E. 2d 672, 673-74. Situs of intangibles is a nebulous concept. Intangibles may have different situs for different purposes.

The New York intangibles consisted mainly of testator's interests in trusts and a custody account in a New York bank. As has been stated, the physical evidence of the intangibles was in New York and testator considered the property to be in New York. He provided for bi-state administration of his assets. When the New York executors qualified the intangible property which testator held in that State vested in them for purposes of administration.

Code § 64.1-139 requires no different conclusion. It cannot properly be construed to mean more than that the personal representative shall administer faithfully the personal estate of his decedent, whether such estate is disposed of entirely by will or passes partially by intestacy. See 1 Harrison on Wills and Administration, 2 ed., § 203(5), p. 331.

Thus under the circumstances of this case effect should be given to the testator's stated intention and the bulk of his estate should be fully administered by the executors in New York.

■ Grasty also contends that the court erred in holding that the inventory of the estate required to be filed with the Commissioner of Accounts by Code § 26-12 was sufficient.

After disagreement arose between Grasty and Clare concerning the administration of the estate no single inventory, signed by the Virginia co-executors, was filed. Instead each filed an inventory which the court found to be "identical in substance and substantially identical in form" and to "collectively constitute a joint inventory sufficient in form and substance" to comply with the statutory requirements.

The inventories in question contain an itemization of the property with which the Virginia executors are charged, and while we do not approve of the practice followed in this case, it was not reversible error to hold the inventories to be sufficient.

Grasty also complains that the various State income and inheritance tax returns were filed and the taxes shown due were paid without his collaboration.

By the time the court's decree was entered on November 15, 1966, the Virginia inheritance tax return had been filed and over one million dollars in inheritance taxes had been paid to this State. Likewise a State income tax return for the last year of decedent's life had been filed and a State income tax return for the estate had been filed.

The record shows that these returns have been accepted by the State Department of Taxation notwithstanding Grasty's objections made to that department. While this court again does not approve of the procedure followed in the filing of these returns, no benefit would accrue to the estate were this court to hold them improper. In fact, such a holding might be detrimental because penalty and interest might then attach.

The court held that Grasty was not responsible to the estate or the beneficiaries for filing the Virginia returns or paying the Virginia taxes except that the accounts of the Virginia executors shall not be settled until it is shown that the required taxes have been paid. Code §§ 58-871, 58-872. Such holding is not erroneous.

Grasty further complains that the court erred in holding that he was not required to join in the filing of the Federal estate and income tax returns. Again the record shows that such returns had been filed and had been accepted by Federal tax officials and that, among other things, over five and one-half million dollars in Federal estate taxes had been paid. The trial court held that Grasty was not responsible to the estate or the beneficiaries thereof for the filing of Federal returns or for the payment of Federal taxes except that the assets in the hands of the Virginia executors should not be distributed until it

was clear that all Federal taxes had been paid. 31 U.S.C.A., § 192. Under the circumstances of this case the court below did not err in this connection.

Grasty finally contends that the court erred in holding that the Virginia executors had no responsibility for marshaling and delivering to testator's widow any but her share of the Virginia assets, excluding the New York intangibles.

We have held above that the New York intangibles are to be administered by the New York executors. They are under the control of the courts of that State. As already noted, the highest court of that State has held that Clark's widow is entitled to her statutory share of her husband's estate as granted by the law of Virginia. By her pleadings she has indicated that she wishes the New York assets to be handled by the New York executors.

The trial court was correct in holding that the Virginia executors had responsibility to marshal and deliver to testator's widow only her portion of the Virginia assets.

Testator made it clear by his will how he wanted his estate handled and such plan was not contrary to law. The primary beneficiaries under the will concur in his plan. There has been no showing that any creditors have been or will be harmed or that tax officials, State or Federal, object. All in all the trial court's decree is to the benefit of the estate and to the detriment of no one except a complaining executor in Virginia whose primary responsibility was to carry out the wishes of his testator.

The decree below is

*Affirmed.*

## Record No. 6859

This appeal involves an injunction granted by the Circuit Court of Fauquier County against Grasty shortly after that court's decree was entered in the will construction suit involved in Record No. 6858, *supra.*

As previously stated, the court below orally announced its decision in that suit on October 11, 1966, and its final decree was entered on November 15, 1966.

On November 21, 1966, Suzanne D. Clark and Elizabeth D. Clark, testator Clark's mother and widow, respectively, filed a petition in the court below seeking a temporary injunction against Grasty, executor.

Their petition alleged that Grasty "on or about" October 29, 1966, had filed a petition for writ of mandamus against C. H. Morrissett, State Tax Commissioner, in the Circuit Court of the City of Richmond seeking to nullify all inheritance and income tax returns filed in behalf of Clark's estate; that Grasty had instituted administrative proceedings seeking to have the Federal estate and income tax returns filed in behalf of the estate nullified by Federal tax officials.

The petition alleged that these actions could not benefit the estate or persons interested therein in any manner and created the risk of subjecting the estate to substantial penalties, interest and other charges and of losing the benefit of election of the optional valuation date for estate tax purposes and election of a fiscal year for income tax purposes.

Petitioners prayed that the court enjoin Grasty and those acting in his behalf from prosecuting said proceedings or any other proceedings designed to question the validity of the tax returns filed in behalf of the estate.

N. Holmes Clare, Virginia co-executor, filed an answer admitting the allegations of the petition and joining in the prayer thereof.

On November 29, 1966, the court refused to grant a temporary injunction pending hearing but ordered a hearing on the merits on December 20, 1966.

Thereafter Grasty filed a plea in abatement, demurrer and his answer, in which he, among other things, admitted the allegations that he had instituted proceedings seeking to nullify the tax returns filed in behalf of the estate.

On December 20, 1966, after a hearing, the court entered a decree granting a temporary injunction. The decree enjoined Grasty and those acting in his behalf from prosecuting the mandamus proceeding, the administrative proceedings, or any judicial, administrative or other proceeding relating to the estate or inheritance tax returns or from seeking any rulings with respect thereto.

On March 3, 1967, Grasty filed a "Motion to Vacate and Dissolve Injunction" which motion the court below denied by decree entered that day and Grasty was granted an appeal.

Appellant Grasty raises several procedural questions concerning the granting of the injunction and the court's refusal to dissolve same. He then substantively contends that the injunction should not have been granted.

The court below granted its temporary injunction to maintain the

status quo pending Grasty's appeal in the will construction case (No. 6858). That case has now been decided and this court has held that the bulk of testator's estate is to be administered in New York and that Grasty, as Virginia co-executor, has no responsibility therefor. This court has also held, without necessarily approving all the procedures followed, that since no benefit would accrue to the estate by any attack on the tax returns filed in its behalf, the trial court was correct in its rulings on these matters.

The duration of the injunction involved in this appeal is until this court disposes of Record No. 6858, and "the record thereof shall have been returned to and filed in this [circuit] court, and thereafter until such time as the said defendant, William T. Grasty, shall have given all of the other parties hereto by their respective counsel reasonable notice that he intends to ask that this injunction be dissolved," so that a determination might be made by the circuit court "as to whether this injunction should be dissolved or made permanent."

In view of the conduct of the said William T. Grasty as set forth in said Record No. 6858, this Record No. 6859, and Record No. 7024 [suit for removal], all decided today, we hold that the granting of the injunction aforesaid was right and proper, and the decree rendered in this case, Record No. 6859, is now accordingly approved and affirmed.

*Affirmed.*