## Richmond

N. Holmes Clare, Executor, Etc., Et Al. v. William T. Grasty, Executor, Etc.

September 1, 1972.

Record No. 7837.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*Thomas V. Monahan (John S. Battle, Jr.; William R. Waddell; Hall, Monahan & Engle; McGuire, Woods & Battle,* on brief), for appellants.

*Bolling R. Powell, Jr.; George A. Horkan, Jr. (Powell, Horkan & Powell,* on brief), for appellee.

SNEAD, C.J., delivered the opinion of the court.

This appeal is a sequel to *Grasty v. Clare and Clark* (Record Nos. 6858 and 6859), 210 Va. 21, 168 S.E.2d 261 (1969), and *Clark v. Grasty* (Record No. 7024), 210 Va. 33, 168 S.E.2d 268 (1969). By stipulation of the parties, these records are made a part of the record in this case. Basically, we are called upon to review the trial court's allowance, out of the estate of Robert Vanderpoel Clark, Jr., of attorneys' fees and disbursements of counsel for William T. Grasty, co-executor, and the allowance of a commission to Grasty for his services as co-executor. We do not have any questions before us regarding the commission awarded co-executor Clare or the attorneys' fees allowed his counsel out of the estate.

Robert Vanderpoel Clark, Jr. died testate on October 4, 1964. At the time of his death he was domiciled in and a resident of Fauquier County, Virginia. He owned real and personal property in Virginia valued at approximately $400,000, but the bulk of his estate consisted of intangible personal property situated in New York and valued at between $19,000,000 and $26,000,000.

By his last will he nominated N. Holmes Clare, a resident of New York, and The Chase Manhattan Bank of New York as executors of all his assets, with the exception of his Virginia assets. He nominated N. Holmes Clare and William T. Grasty, both attorneys at law, as executors of his Virginia assets. The will defined his Virginia assets as consisting only of real property owned in Virginia, tangible personal property located in Virginia and any funds on deposit in Virginia banks.

Under the will, the Virginia executors were required to sell the Virginia assets not specifically devised or bequeathed. After paying debts and expenses of administration, the Virginia executors were to transmit the net proceeds of the sales and any net balances on deposit in Virginia banks to the New York trustees (Clare and Chase Manhattan). See *Grasty v. Clare and Clark, supra.*

From the beginning of the administration of this estate co-executors Clare and Grasty have been involved in a dispute concerning Grasty's responsibilities and obligations to the estate. Clare, after obtaining a waiver of service and consent from Grasty, probated the will in

New York on October 16, 1964. Three days later Clare and The Chase Manhattan Bank qualified as executors in accordance with the will. On February 1, 1965, the will was probated in Virginia. Grasty, in a letter dated January 14, 1965 and addressed to the Clerk of the Circuit Court of Fauquier County, voluntarily renounced his right to qualify as co-executor in accordance with the will.[1]

Later, Grasty retracted his renunciation and on March 15, 1965, after a proceeding wherein his right to qualify was contested, Grasty and Clare qualified as co-executors in accordance with the will. At the contested qualification proceeding, Grasty sought to qualify in a manner that would have given him joint control over all the testator's assets rather than joint control over only the Virginia assets as provided in the will.

As a result of the conflict between Clare and Grasty concerning Grasty's responsibilities, Clare filed, on October 13, 1965, a suit in equity to have the will construed. He urged that under the will the powers, responsibilities and authority of the Virginia executors extended only to the Virginia assets. He contended that Grasty had refused to accept the limitations imposed upon him by the will.

On the other hand, Grasty urged that the will and the pertinent Virginia statutes be construed so as to give him joint control over all the testator's assets. Grasty also contended that he and Clare were jointly responsible for filing an inventory of the assets, including the New York assets, and the filing of various state and federal tax returns. He complained that Clare had refused to cooperate in these matters. (Separate, but essentially identical, inventories were filed by Clare and Grasty, and the tax returns filed were not signed by Grasty.)

The trial court held that no law of Virginia prohibited the testator's intention, as expressed in his will, from being carried out. Thus, in accordance with the will, Grasty had joint responsibility for and authority over only the Virginia assets. The court further pointed out that no creditors of the testator would be adversely affected and that state and federal tax returns had been filed and taxes paid. The

---

[1] The January 14, 1965 letter was written as a result of an agreement between Grasty and the law firm of Caplin, Battle and Harris. Grasty agreed not to qualify as an executor and Caplin agreed to serve as attorney for the estate in Virginia, if asked. The agreement also provided that in consideration for services already rendered by Grasty and upon his agreement to give further assistance Grasty would receive 50% of any net fee earned by Caplin, but in no event more than $20,000. A check was sent to Grasty on February 1, 1965. Grasty retracted his renunciation as executor on February 2, 1965 and the check was returned to the Caplin firm on February 8, 1965.

returns and payments were accepted by tax authorities notwithstanding Grasty's objections.

Grasty prosecuted an appeal from the decree entered by the trial court, but this Court affirmed that decree. (See *Grasty v. Clare and Clark, supra.*) We pointed out in that decision that, "[i]t should be remembered that it is not creditors or beneficiaries who are seeking an adjudication that would *frustrate* testator's intention, but one of the executors appointed by his will and given specific duties thereby." [Emphasis added.] 210 Va. at 27, 168 S.E.2d at 265.

Shortly after the decree in the construction suit was entered, Grasty was enjoined by the trial court from taking action deemed to be in "derogation" of this decree, detrimental to the estate and serving no useful purpose. On appeal to this Court by Grasty, we affirmed the trial court's decree enjoining him. *Grasty v. Clare and Clark, supra.*

The actions taken by Grasty which resulted in his being enjoined were that he instituted proceedings to have the state and federal tax returns nullified because he had not signed them. In this regard he filed a mandamus petition against the State Tax Commissioner to compel him to reject the state returns. He proceeded before the Internal Revenue Service in an effort to have the federal returns rejected. Yet, both the state and federal returns were accepted by the appropriate tax authorities. A ruling by the Internal Revenue Service National Office concerning this estate stated that the federal estate tax returns filed were valid "for all legal purposes."

During the administration of the estate two removal suits were brought against Grasty by Elizabeth D. Clark and Suzanne D. Clark, the principal beneficiaries under the will. The first suit was brought on November 21, 1966. Grasty's removal was requested because of his alleged disloyal and detrimental actions with regard to the estate's federal and state tax returns. By an order entered June 1, 1967, the trial court refused to remove Grasty, citing as one of its reasons for such refusal that Grasty had been enjoined from doing the acts which the beneficiaries relied on as grounds for removal. An appeal was granted from this order (Record No. 6860) but was later dismissed on motion of the beneficiaries.

After an appeal and supersedeas were awarded Grasty in the injunction suit (Record No. 6859), he again sought to upset the state and federal tax returns. He interpreted the award of supersedeas as having the effect of setting aside the injunction. Hence, on January

16, 1968, the beneficiaries again requested Grasty's removal as co-executor. But the trial court, in a decree entered February 20, 1968, denied the motion, although it held that the injunction was not superseded. On appeal, this decree was affirmed by a divided court. (See *Clark* v. *Grasty*, 210 Va. 33, 168 S.E.2d 268 (1969)).

It can be seen from the above mentioned facts that Grasty has endeavored from the beginning to gain joint control and authority over the entire estate even though the expressed intention of the testator commanded otherwise. We said in *Clark* v. *Grasty, supra,* 210 Va. at 38, 168 S.E.2d at 271-72 that, "[i]t is not doubtful that Grasty had an urgent desire to administer the whole estate of the testator. * * * But as an executor entrusted by his testator with only the Virginia assets of the estate, Grasty's primary and pervading duty was to the testator and the legal directions in his will." Whether Grasty had law which might support his position is not material, since it is the executor's duty to make every effort to carry out the testator's intention.

The gross Virginia estate was finally valued at $441,643.94. Out of this amount the Commissioner of Accounts allowed the co-executors a commission of five percent ($22,082.20). Grasty was allowed one-half of the commission ($11,041.10) and co-executor Clare the remaining half.

Counsel for Grasty requested fees for services rendered the estate in the amount of $147,650. For disbursements of counsel they requested $2,039.52. The Commissioner allowed the total amount claimed as disbursements of counsel, but reduced the counsel fees to $79,000.

Specifically, the Commissioner allowed Grasty's counsel $12,550 for services rendered in connection with the contested qualification of Grasty as a co-executor, $15,000 for services rendered in the will construction suit, $36,450 for services rendered in the two removal suits brought against Grasty, and $15,000 for services rendered with regard to the general administration of the estate.

The Commissioner disallowed fees to Grasty's counsel for services rendered in the mandamus action against the State Tax Commissioner, the proceedings before the Internal Revenue Service and the injunction suit against Grasty wherein he was enjoined. The Commissioner disallowed the fees for these services ($14,450) on the ground that such services were not rendered for the benefit of the estate.

Clare and the principal beneficiaries filed exceptions to the Commissioner's report essentially objecting to the allowance of Grasty's commission, the allowance of attorneys' fees to Grasty's counsel and the allowance of the disbursements of counsel. On February 12, 1971, the Circuit Court of Fauquier County entered an order overruling all exceptions to the Commissioner's report and confirming it.

Code § 26-30 provides:

> "The commissioner, in stating and settling the account, shall allow the fiduciary any reasonable expenses incurred by him as such; and also, except in cases in which it is otherwise provided, a reasonable compensation, in the form of a commission on receipts, or otherwise."

It is well settled that the allowance of a commission is within the sound discretion of the trial court. However, a commission should be allowed only when the executor has faithfully discharged his duties to the estate in his charge. A fiduciary's compensation is based upon the services he has rendered in behalf of the estate or trust. *Dearing* v. *Walter*, 179 Va. 620, 623, 20 S.E.2d 483, 484 (1942). Where there has been partial performance of duty that has been of value to the estate and partial failure to execute such duty, partial compensation may be permitted. *Cannon* v. *Searles*, 150 Va. 738, 750, 143 S.E. 495, 499 (1928).

The statute also provides that a fiduciary is entitled to any reasonable expenses incurred by him in his capacity as a fiduciary. An executor may, in good faith, seek the aid of counsel in the *execution of his duties*. However, in addition to good faith there must be some reasonable ground that renders the employment of counsel reasonably necessary to aid the executor in the performance of his duties. If counsel is employed under these circumstances, then reasonable expenses incurred by such employment are assessable against the estate. *Stull* v. *Harvey*, 112 Va. 816, 822, 72 S.E. 701, 703 (1911). But expenses of counsel for services rendered not in aid of the executor in the performance of his duties are not chargeable against the estate.

■ In reviewing the allowance of counsel fees in this case we must ask the question, what executorial duties was Grasty seeking to perform when he employed counsel? The trial court approved $12,550 as a fee to Grasty's counsel for services rendered in the contested qualification. Had Grasty been content to qualify in accord-

ance with the will, then the expenses of his qualification would have been chargeable to the estate. He would have been carrying out the intention of his testator. But Grasty voluntarily renounced his right to qualify and later when he retracted his renunciation and sought to qualify, he attempted to do so in a manner that would have given him joint control over all the testator's assets. This was clearly contrary to the testator's expressed intention. Thus, Grasty was not seeking to perform duties required under the will and for that reason the expenses he incurred were not chargeable to the estate.

In the suit to have the will construed, Grasty again asserted his contention that he should have joint control over all the assets, and that the will should be so construed. But the will provided:

"FIRST: (A) I appoint my counsel, N. HOLMES CLARE and THE CHASE MANHATTAN BANK a corporation organized under the laws of the State of New York, the Executors of this Will for all my assets, with the exception of my Virginia assets which shall consist only of any real property which I may own in the State of Virginia, any tangible personal property situated in that State, and any funds on deposit in banks located in Virginia.

"(B) For my Virginia assets I appoint as Executors my counsel N. HOLMES CLARE and WILLIAM T. GRASTY.* * *"

Can it be said that Grasty was performing his duties as co-executor when he sought to *frustrate* the testator's expressed wishes? We are convinced he was not. Further, Grasty appealed the trial court's decree that upheld the testator's intention. He had no duty to do so. *Shocket, Executor* v. *Silberman*, 209 Va. 490, 165 S.E.2d 414 (1969). In our decision affirming the trial court's decree in the construction suit, we said, "[a]ll in all the trial court's decree is to the benefit of the estate and to the detriment of no one except a complaining executor in Virginia whose primary responsibility was to carry out the wishes of his testator." *Grasty* v. *Clare and Clark, supra*, 210 Va. at 30, 168 S.E.2d at 267. Hence, it was error for the trial court to approve the Commissioner's action in charging the estate $15,000 for services that could have been beneficial to Grasty only.

As stated above, $36,450 was charged against the estate for services rendered by Grasty's counsel in defending him in the two removal suits. Grasty relies on *Willson* v. *Whitehead*, 181 Va. 960, 27 S.E.2d 213 (1943) where this Court held that Willson, a trustee,

was entitled to his costs, out of the estate, expended in defending himself in a removal suit. This Court cited authority for the proposition that if an attempt to remove a trustee fails, it is proper to order payment of costs out of the trust estate. *Willson* v. *Whitehead, supra,* 181 Va. at 966, 27 S.E.2d at 216.

Yet, the facts in *Willson* are clearly distinguishable from the present case. Willson's conduct was found to be absolutely beyond reproach. This Court pointed out that there was not a particle of evidence to justify his removal. Certainly in a case like *Willson* a trustee should recover his expenses where he is subjected to an unwarranted and groundless attack.

But the two removal suits against Grasty were in no way groundless. Grasty had pursued a course of conduct so detrimental to the estate that he had to be enjoined. Had he been successful in having the tax returns nullified, the estate may have been subjected to additional taxes, as well as penalties and interest, and, certainly, the costs of administration would have been increased. The trial court's refusal to remove Grasty did not exonerate him because, as stated above, one of the reasons given for not removing him was that he had been enjoined. In light of these circumstances, the services rendered by counsel were for Grasty's personal benefit. Hence, it was error to charge the estate for those services.

■ We find no error in the trial court's approval of an allowance to Grasty's counsel of $15,000 for services rendered in the general administration of the estate. Originally, Grasty's counsel requested $34,700 for these services, but the Commissioner reduced the request to $15,000 because some of the work performed by counsel could have been done by Grasty as part of his routine duties.

As for the disbursements of Grasty's counsel allowed against the estate, any disbursements regarding the qualification proceeding, the construction suit, the mandamus proceeding, the Internal Revenue proceeding, the injunction suit, and the removal proceedings are disallowed for the reasons expressed herein with regard to the counsel fees.

Grasty, as a co-executor of the Virginia estate, was obligated to perform his duties with good faith and loyalty. "Executors and administrators must perform the duties of their office with the highest fidelity and with the utmost good faith and loyalty to the estate in their charge." *Dearing* v. *Walter, supra,* 179 Va. at 622-23, 20 S.E.2d at 484.

■ The trial court approved a commission in this case of five percent of the Virginia assets, which commission was divided equally between Clare and Grasty. Five percent is the usual commission. *Bickers* v. *National Bank, Ex'r.*, 201 Va. 257, 110 S.E.2d 514 (1959).

As noted above, compensation is based upon services rendered to the estate or trust and partial compensation may be permitted when only partial service has been rendered. Grasty may have rendered services to the estate but it is clear that his other actions were detrimental to the estate. Yet, in spite of his conduct, he has been awarded his full share of the usual commission. We think that was error and are of opinion that Grasty's commission should be redetermined.

The Commissioner in his report allowing the full commission, stated that, "[t]he Court did not remove William T. Grasty as Co-Executor * * *." But this is not the sole criterion. The trial court should weigh all of Grasty's conduct during the entire administration of this estate and allow a commission to him, if any, only insofar as he has rendered services to the estate.

For the reasons stated, the decree appealed from will be

*Affirmed in part, reversed in part and remanded.*