PRESENT:  All the Justices

STAVROS P. GALIOTOS, A/K/A STEVE P.
GALIOTOS, CO-EXECUTOR OF THE ESTATE
OF IRENE A. GALIOTOS

v.  Record No. 200504

TASOS A. GALIOTOS, CO-EXECUTOR OF
THE ESTATE OF IRENE A. GALIOTOS,
ET AL.


TASOS A. GALIOTOS, CO-EXECUTOR OF
THE ESTATE OF IRENE A. GALIOTOS

v.  Record No. 200667

STAVROS P. GALIOTOS, A/K/A STEVE P.
GALIOTOS, CO-EXECUTOR OF THE ESTATE
OF IRENE A. GALIOTOS, ET AL.

OPINION BY
JUSTICE S. BERNARD GOODWYN
June 3, 2021

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

In these appeals regarding two brothers' prolonged disputes concerning the

administration of their late mother's estate, we consider whether the circuit court erred in

removing both brothers from their fiduciary roles, and replacing them with a disinterested third

party.

I. BACKGROUND

Anthony Galiotos (Anthony) and Irene Galiotos (Irene), husband and wife, amassed a

significant number of commercial real estate properties during their marriage, along with other

valuable assets.  Anthony died testate in 2006, survived by Irene and their three sons:  Stavros

Galiotos (Steve), Tasos Galiotos (Tasos), and Paul Galiotos (Paul).

On June 23, 2016, Irene died testate. In her will, Irene nominated and appointed Steve and Tasos to serve as co-executors of her estate (the Estate). She provided that "[i]f either is or becomes unable or unwilling to serve as Co-Executor hereunder, the other shall continue to serve without the necessity of a successor Co-Executor." On August 1, 2016, Steve and Tasos qualified as co-executors of the Estate. The brothers have had numerous disputes and misunderstandings between each other as they have attempted to carry out their duties as co-executors of the Estate.

After Steve and Tasos had been disagreeing for some time, the attorney who was representing the Estate informed the brothers that because she represented the interests of the Estate, she could not represent either Steve or Tasos regarding any legal disputes against the other. Ultimately, counsel for the Estate informed both Steve and Tasos that, in her opinion, both were permitted to hire legal counsel at the expense of the Estate, to represent them separately in their roles as fiduciaries. Both brothers hired separate legal counsel.

The brothers continued to have difficulty in reaching agreements concerning the administration of the Estate. The disagreements between the brothers resulted in the hiring of several different accounting firms as well as legal representatives. It also resulted in disputes concerning the payment of counsel by the Estate, the proper distribution method for the interests in the various LLCs, partnerships and property interests, and many other issues. As one brother testified at trial, "[W]e had disagreements. We couldn't agree on simple trivial matters. We couldn't agree on important matters." These disagreements culminated in legal action.

Tasos filed a petition in the Circuit Court of the City of Virginia Beach seeking to remove Steve as co-executor. In the petition, Tasos claims that Steve has failed to fulfill his duties as an executor and has "engaged in a campaign of obstructionism concerning the administration of the

2

Estate . . . in an effort to force Tasos to accede to his demands," and that Steve has refused to work cooperatively with Tasos in administering the Estate.

Tasos cites several examples to support his claim that Steve has violated his fiduciary duties as a co-executor. He notes Steve's insistence that the brothers be given specific properties rather than having co-ownership of the Estate's assets, as Tasos claims his mother's will requires; Steve's refusal to consent to the acceptance of a third party's offer to purchase a piece of property owned by the Estate, at an amount that exceeded the appraised value of the property; Steve's having a bank release the proceeds of a particular certificate of deposit owned by Irene (hereinafter, the CD), to himself and his children "without the consent or acknowledgement of Tasos;" Steve's refusal to allow the Estate to make distributions to beneficiaries from the profits of a company owned by the Estate, which was contrary to how the profits were handled previously; Steve's failure to provide notice and an opportunity for Tasos to purchase the Estate's interest in the Executive Cove property, in accordance with the operating agreement regarding that property; and Steve's insistence, contrary to the terms of Irene's will, that certain property in Greece that the Estate owned, be gifted to their aunt.

Additionally, Tasos asserts that Steve demanded that only his expenses be reimbursed, refusing to agree that Tasos and Paul be reimbursed as well. Tasos also avers that his brothers, Steve and Paul, conspired against him in an attempt to gain control of assets that Tasos independently owned, in furtherance of Steve's plans regarding distribution of the assets of the Estate. Tasos also asserts in his petition that "the administration of the Estate is deadlocked," and attributes that deadlock to Steve's actions, specifically Steve's "intransigence in refusing to perform his duties as executor in an evenhanded and fair manner, and considering his inability to

3

work cooperatively and collaboratively with Tasos in order to further advance the interests of the Estate."

Steve filed an answer and counterclaim. In his counterclaim, Steve claims that Tasos has breached his fiduciary duty as a co-executor and should be removed. He states that Tasos has refused to pay legitimate Estate expenses owed to previous attorneys and law firms and to reimburse Steve for expenses incurred when he travelled from New York for Estate business. Steve also asserts that Tasos, in derogation of his fiduciary duty to the Estate and over Steve's objection, purchased the Estate's interest in Executive Cove, which was co-owned with Tasos, and that Tasos "self-servingly accepted his own unauthorized offer," by the Estate to Tasos, for the below-market sale of that property to Tasos. Steve asks the circuit court to declare that Tasos violated his fiduciary duty and that the Estate's transaction with Tasos concerning the Executive Cove property be declared null and void, or in the alternative, that the circuit court find the "purported purchase price is below-market, unfair, improperly discounted and inaccurate." Steve also claims that the brothers were at an impasse regarding any distribution of the Estate's property in Greece.

In his counterclaim, Steve not only seeks a declaratory judgment that Tasos' actions in redeeming the Estate's interest in Executive Cove for himself are improper and unauthorized, but also that the Estate pay the fees that it owes and that the Estate engage a particular law firm to assist the Estate with its property in Greece. Steve also asks that Tasos be found in breach of his fiduciary duty to administer the Estate prudently, and that he be held personally liable for any and all damages, attorneys' fees, costs and expenses to the Estate and its beneficiaries as a result of his breach of fiduciary duties and obligations. Steve requests that Tasos be removed as a co-executor because of his breaches of fiduciary duty and persistent failure to administer the Estate

4

effectively, his "demonstrated [] unwaivable and significant conflict of interest regarding the Estate and its assets that has caused him to act improperly in his own self-interest" and because Tasos' continued service as co-executor would be harmful to the Estate.

In October 2019, the circuit court held a bench trial on Tasos' and Steve's claims, by each, that the other should be removed as a co-executor. After the witnesses were sworn in, Tasos moved to exclude the non-party witnesses from the courtroom. Paul indicated to the circuit court that he was a party and should not be excluded. Tasos stated that Paul was not a party, whereas Steve indicated he had no position on the matter and was fine with Paul remaining in the courtroom. The circuit court allowed Paul to remain in the courtroom, despite Tasos' objection, but all other non-party witnesses were excluded.

The parties made opening statements, then Tasos presented his case. Tasos' case-in-chief included testimony from three witnesses: himself, a business valuation analyst, and Paul. Paul's testimony was fairly short and primarily concerned e-mails, which were admitted into evidence. He also testified regarding his role in the dispute between his two brothers, including how he often would try to get each brother to understand the other's perspective. Steve's evidence consisted of the two accountants, who had resigned because of the discord between the brothers, and Steve's own testimony. Steve did not testify until near the end of the trial, after Paul had testified.

At the conclusion of the trial, the circuit court noted the numerous different accountants and law firms that had been hired and subsequently resigned, the disagreements regarding the distribution of the Estate, and the general tone of discord between the brothers. The circuit court ruled that, in the best interest of the Estate, both Steve and Tasos should be removed from their roles as co-executors of their mother's Estate. The circuit court appointed a disinterested third

5

party, Stephanie Smith (Smith) who is a Commissioner of Accounts, to serve as administrator of the Estate.*

The circuit court stated from the bench that both Tasos and Steve frequently acted in their own best interest and that each brother's conduct, at times, led to frustration by the other in his efforts to administer the Estate. In reaching its conclusion, the circuit court also noted that "the parties [were not] getting along, not speaking to each other, and exchanging some pretty brutal e-mails" and the circuit court was confident that the parties would not be able to resolve their conflicts and jointly administer the Estate effectively.

The circuit court stated, regarding Steve's conduct, that while the CD was payable on death and not part of the Estate, it felt Steve "should have held off on that" because there was a dispute as to who was entitled to the proceeds. The circuit court explained that while it thought that it was not prudent of Steve to have redeemed the CD, it could not find that Steve breached his fiduciary duty to the Estate in doing so. Concerning Tasos' conduct in regard to Executive Cove, the circuit court noted that Tasos "acted in a unilateral fashion" and should not have done what he did. The circuit court stated that Tasos' conduct was not prudent, but declined to explicitly rule that Tasos breached his fiduciary duty. The circuit court declined to set aside Tasos' redemption of the Executive Cove interest, but provided that Smith, upon becoming the administrator of the Estate, could litigate the issue in a new proceeding if she felt it necessary and prudent to do so.

The circuit court also noted that it found there was no conspiracy and that both Steve and Tasos "kind of beat up on each other for reasons unclear to [the court]." Explaining its reasoning

---

* On motion, Smith was added as a party to this appeal. However, Smith has not taken any position regarding this appeal.

6

summarily, the circuit court noted that Tasos and Steve were "hopelessly deadlocked" regarding what to do with the administration of the Estate.

The circuit court denied attorneys' fees for both Steve and Tasos and ruled that neither would receive compensation for serving as an executor. On January 13, 2020, the circuit court entered an order consistent with its rulings from the bench.

Steve and Tasos filed separate appeals.

## II. ANALYSIS

On appeal, Steve argues that the circuit court erred in removing him as co-executor of the Estate but asserts that the circuit court was correct to remove Tasos. In parallel, Tasos argues that the circuit court erred in removing him as co-executor of the Estate but avers that the circuit court was correct to remove Steve. Both Steve and Tasos assert that the circuit court erred in denying their respective legal fees, costs, and fiduciary compensation. Additionally, Steve assigns error to the circuit court's failure to set aside Tasos' redemption of the Estate's interest in Executive Cove. Further, Tasos assigns error to the circuit court's refusal to exclude Paul from the courtroom during testimony. We address each of these issues in turn.

### A. Removal of Co-Executors

Tasos argues that the circuit court erred in removing him as co-executor of the Estate. He contends that the circuit court committed a "clear error of judgment" in removing him because Steve is the one who caused the deadlock and committed a breach of trust. Tasos asserts that he was acting in the best interests of the Estate and Steve's actions amounted to "obstructionism" and self-dealing, leading to the deadlock.

Correspondingly, Steve argues that the circuit court erred in removing him as co-executor of the Estate. He asserts that an executor may only be removed if he committed fraud, breached

7

trust, was grossly negligent, or breached his fiduciary duty. Thus, he avers that the circuit court did not make any findings that support his removal. Steve argues that his conduct relating to the CD and "deadlock" are improper bases for his removal.

A trial court is afforded considerable latitude when faced with the decision of whether to remove an executor. *Clark v. Grasty*, 210 Va. 33, 37 (1969). Such latitude is necessary in those situations because the trial court, having heard from the parties and witnesses itself, is best suited to make determinations regarding the facts and whether an executor's continued service would benefit the estate. *See Reynolds v. Zink*, 68 Va. (27 Gratt.) 29, 31-32 (1876). Thus, we review the circuit court's decision to remove both Steve and Tasos as co-executors for abuse of discretion.

When we say that a circuit court has discretion, we mean that "the [circuit] court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Landrum v. Chippenham and Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (internal quotation marks omitted). There are three principal ways in which a circuit court can abuse its discretion:

> when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Id.* (internal quotation marks omitted). "Thus, only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Sauder v. Ferguson*, 289 Va. 449, 459 (2015) (internal quotation marks omitted).

The circuit court may revoke and annul the powers of an executor for any cause, as long as the removal of an executor appears proper. Code § 64.2-1410(A). The critical inquiry is

8

whether it is in the best interest of the estate that the executor, or executors, be removed. *Clark*, 210 Va. at 37. To that end, removal of an executor who is guilty of fraud, breach of trust, or gross negligence would surely benefit the estate. *See id.* at 38. However, those are not the only justifications that would warrant removal of an executor. We have previously indicated that "friction" between individuals can justify the removal of an executor when removal would achieve some beneficial end. *Id.* at 37-38. Ultimately, the determination of whether the removal of an executor would be in the best interest of the estate is left to the broad discretion of the trial court.

It is undisputed that Steve and Tasos were not getting along and that as a result, the administration of the Estate was suffering. While Steve and Tasos were co-executors, several different legal representatives and accountants were hired to help with the administration of the Estate; evidence showed that the conflict between the brothers led to numerous subsequent resignations, at the expense of the Estate. Additionally, Steve and Tasos could not agree on how to distribute the assets of the Estate. Admittedly, the brothers could not even agree on simple trivial matters, much less important ones, and their co-administration of the Estate was not effective.

In this instance, we cannot say that the circuit court abused its discretion and thus erred in removing both Steve and Tasos from their roles as co-executors. The strife and conflict between the brothers, as it relates to the administration of the Estate, is extensive and well-documented. The circuit court found that there was significant friction between the co-executors, characterizing Steve and Tasos as "hopelessly deadlocked." As a result, the circuit court concluded that it would be in the best interests of the Estate to remove both co-executors and appoint Smith, a disinterested third party, as administrator so that the administration of the Estate

9

could proceed.  In other words, the circuit court found that there was failure to cooperate between Steve and Tasos, which hindered the administration of the Estate to its detriment, and used that as a basis for concluding that removing both of the co-executors, and replacing them with a disinterested third party, was in the best interests of the Estate.  Based on our review of the record, we cannot conclude that this decision was an abuse of the circuit court's discretion.

B.  Legal Fees & Fiduciary Compensation

Tasos asserts that the circuit court's ruling denying him reimbursement of attorneys' fees in this action was clearly erroneous.  He argues that he engaged legal counsel pursuant to the advice from the Estate's counsel that each co-executor could engage legal counsel at the expense of the Estate.  Tasos contends that he substantially prevailed in the action and that the circuit court should have awarded his attorneys' fees.  He also argues that "it is beyond question" that he performed his duties in good faith and that his acts benefitted the Estate; therefore, in his view, he should be compensated for serving as co-executor.

Similarly, Steve argues that the circuit court erred in denying him legal fees and costs. He contends that he retained counsel upon the advice of the Estate's counsel, and that he did so in good faith; thus, in his view, he is entitled to fees and costs.  Ultimately, Steve asserts that because the action concerns his performance of fiduciary duties, the law allows him to recover legal costs and fees for his defense.

A trial court's decision to refuse attorneys' fees is reviewed for abuse of discretion. *Lynchburg Div. of Social Servs. v. Cook*, 276 Va. 465, 484 (2008).  An executor is entitled to "any reasonable expenses incurred by him in his capacity as a fiduciary," which may include attorneys' fees.  *Clare v. Grasty*, 213 Va. 165, 170 (1972).  While "[a]n executor may, in good faith, seek the aid of counsel in the [e]xecution of his duties," he is not entitled to attorneys' fees

10

and legal costs simply because they were incurred in good faith. *Id.* The attorneys' fees and costs must be for services that aid the executor in the performance of his duties and are beneficial to the estate. *Id.*; *see also O'Brien v. O'Brien*, 259 Va. 552, 557-58 (2000) (holding that an executor was rightfully denied attorneys' fees because the fees "were incurred for his personal benefit and not to benefit the estate or to aid him in his duties as an executor").

Additionally, "[i]t is well settled that the allowance of a commission is within the sound discretion of the trial court." *Clare*, 213 Va. at 170. An executor is only entitled to a commission "when the executor has faithfully discharged his duties to the estate in his charge" because his commission "is based upon the services he has rendered in behalf of the estate." *Id.*

In the present case, the circuit court did not abuse its discretion in denying both Steve's and Tasos' requests for their legal fees to be paid by the Estate. Although the hiring of the numerous attorneys and law firms may have in some way benefitted the Estate, there is ample evidence to support a conclusion by the circuit court that it was actually done to advance the individual interests of the competing co-executors, rather than the interests of the Estate. In fact, the circuit court found that Steve and Tasos had at times pursued their own interests, rather than the Estate's, which is what led to the frustration of the Estate's administration. Similar reasoning applies to the circuit court's ruling upon their claims for fiduciary compensation. As such, the circuit court did not abuse its discretion when it denied Steve's and Tasos' claims for legal fees and fiduciary compensation because there is evidence to support the circuit court's exercise of its discretion not to do so.

## C. Executive Cove

Steve argues that the circuit court erred when it declined to set aside Tasos' purchase of the Estate's interest in Executive Cove. He contends that the circuit court should have set aside

the sale, declared the transaction void, or ordered Tasos to pay damages in an amount reflecting the financial benefit he obtained. Steve asserts that the circuit court found that Tasos breached his fiduciary duty when he redeemed the Estate's interest in Executive Cove and avers that such a finding necessitated that the transaction be set aside. He further argues that the terms of the Executive Cove operating agreement do not authorize Tasos' actions. Steve contends that when Tasos acted unilaterally, in offering the sale of the Estate's interest in Executive Cove to himself, he acted beyond the scope of his authority as a co-executor of the Estate.

The basis of Steve's counterclaim was his claim that Tasos breached his fiduciary duty and should therefore be removed as co-executor; all relief requested was incidental to that claim. The circuit court did not find that Tasos breached his fiduciary duty. It is well established that a circuit court speaks only through its written orders. *See, e.g., Rose v. Jaques*, 268 Va. 137, 147 (2004). Even though the circuit court's comments at the trial could be interpreted as a finding that there was evidence that Tasos may have breached his fiduciary duty, as regards his actions concerning the Estate's interest in the Executive Cove property, the circuit court declined to incorporate its comments into its written order and it did not actually state from the bench or in its order that it found that Tasos violated his fiduciary duty.

In essence, the circuit court concluded that it did not need to resolve the issue of whether there was a breach of fiduciary duty in order to rule upon whether the co-executors should be removed. As such, we cannot say that the circuit court erred by declining to set aside Tasos' redemption of the Estate's interest in Executive Cove and indicating that Smith could bring the issue before the court on behalf of the Estate in a future proceeding, if she deemed it appropriate and prudent to do so.

D. Witness Remaining in Courtroom

Tasos argues that the circuit court erred in denying his motion to exclude witnesses from the courtroom, which included Paul. He asserts that under the statute the circuit court must exclude witnesses once a party makes the motion. Tasos avers the error was not harmless because allowing Paul to be in the courtroom gave Paul the opportunity to ensure his testimony fell in line with Steve's theory of the case and rebutted Tasos' testimony.

"The court trying any civil case . . . shall upon the motion of any party, require the exclusion of every witness." Code § 8.01-375. There is an exception for individuals who are named parties; they are permitted to remain in the courtroom. *Id.* We have previously emphasized that the purpose of the statute is to "discourage and expose fabrication and collusion by witnesses and to minimize the likelihood that witnesses will alter their testimony so that such testimony is consistent with testimony provided by other witnesses." *Motley v. Tarmac Am., Inc.*, 258 Va. 98, 101-02 (1999).

However, "[a]bsent an error of constitutional magnitude, no judgment shall be arrested or reversed when it plainly appears from the record and the evidence given at trial that the parties have had a fair trial on the merits and substantial justice has been reached." *Spruill v. Garcia*, 298 Va. 120, 127 (2019) (citing Code § 8.01-678) (internal quotation marks omitted). "Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the court's result." *Forbes v. Rapp*, 269 Va. 374, 382 (2005). "The harmless-error check on judicial power has never been a begrudged limitation," instead it is favored by our courts "because it stems from the imperative demands of common sense." *Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 853 (2019).

13

Paul testified as a part of Tasos' case-in-chief and long before Steve testified. The focus of Paul's testimony was a batch of e-mails, which were also admitted into evidence. He also testified that Steve and Tasos often would not have empathy for the other's position, so Paul would often attempt to get each brother to understand the other's position. Given the timing and nature of Paul's testimony, and the testimony of other witnesses before and after Paul's testimony, it plainly appears that Paul's presence in the courtroom did not prevent Tasos from receiving a fair trial on the merits. As such, we are of the opinion that to the extent the circuit court erred in permitting Paul to remain in the courtroom, such error is not a sufficient reason to reverse the judgment of the circuit court.

### III. CONCLUSION

The circuit court did not abuse its discretion in removing Steve and Tasos as co-executors based on its conclusion that the brothers were, to the detriment of the Estate, deadlocked regarding the administration of the Estate. It did not abuse its discretion in denying Steve and Tasos compensation, legal fees, and costs, nor did it err in declining to set aside the Executive Cove transaction, in that it did not need to resolve that matter in order to determine whether the co-executors should be removed. Further, there is no reversible error regarding Paul's presence in the courtroom during the trial.

Accordingly, we will affirm the judgment of the circuit court.

*Affirmed.*