# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### GILPIN WILLSON v. ELEANOR ENSLOW WHITEHEAD, W. H. STEELE AND L. W. H. PEYTON, TRUSTEE, ETC.

October 13, 1943.

Record No. 2673.

Present, Campbell, C. J., and Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*J. Wesley Taylor*, for the appellant.

*Wayt B. Timberlake, Jr.*, and *Jos. I. Nachman*, for the appellees.

BROWNING, J., delivered the opinion of the court.

*Kable's Executors* v. *Kable's Trustees* is a suit pending in the corporation court for the city of Staunton, Virginia, asking for its guidance and direction in the settlement of the estate of the late Col. William G. Kable, which, in large part, consisted of capital stock in the Staunton Military Academy. This institution had been the object of the parental care and concern of Col. Kable for a number of years. He established it, and with the aid of others, presently to be considered, nurtured and guided it through a period of varying fortunes. It was the apple of Col. Kable's eye.

He died in 1920, leaving a will, under the provisions of which Gilpin Willson, the appellant in this proceeding, and four others, including the testator's wife, were appointed trustees to effect and execute a certain trust therein set out. This involved the control, management and handling of the capital stock of the institution, which in turn involved the conduct, management and operation of the institution itself.

Gilpin Willson was also named as one of the three executors of Col. Kable.

When Kable died the school owed some $362,000.00. The management created by the will operated the institution from 1920 to 1937 and during that period its indebtedness was paid. About $250,000.00 of net income was paid to the

beneficiaries and some $510,000.00 was expended in adding to the physical properties of the school. The accomplishment of this phenomenal success was due largely to the business acumen and diligence of Gilpin Willson. This was recognized by the widow of the testator, who was the principal beneficiary, by letters expressing her obligation for his services and his fidelity to the trusts committed to him.

Despite this situation one of the beneficiaries, a son of Col. Kable, filed a petition in the suit, referred to, charging the said Willson with fraud and mismanagement in connection with the trust estate, a breach of the trust, and flagrant disregard of the interests of the institution and its owners. There were ten separate charges of misfeasance and these were added to and enlarged by an amended petition filed later and the removal of Willson as a trustee was demanded.

Willson was a successful business man of the city of Staunton. He had been prominently connected with the civic affairs of the community. His activities penetrated every realm of public interest and endeavor. He was a man of high repute in matters of church and state. He bitterly resented the imputations upon his character and his course of conduct in the operations of the institution which had been, in part, entrusted to him by his lifelong friend and coadjutor, whose esteem and confidence he had won. He successfully defended the charges brought against him by the employment of competent attorneys of high standing, who were unremitting in their efforts to bring out the evidence connected with and controlling transactions which extended over a period of 17 years. The litigation was long and encompassed a variety of subjects, extending over a wide field of business activities. When the financial structure of the institution was tottering he lent to it his own credit by negotiating large loans for the payment of which he made himself personally bound.

By its decree the trial court fully and completely exonerated him from all blame or censure on account of the charges in the petition except these:

(1)   That your petitioner was responsible for the payment of the Cooksey note.

(2)   That your petitioner be required to repay to the Academy such part of the premiums paid by it for that portion of the policy of insurance on Thomas H. Russell proportionate to the part of the proceeds of the policy paid to Margaret K. Russell, wife of Thomas H. Russell, deceased, being one-fifth of the premium, with interest on each yearly expenditure at 6%.

(3)   That your petitioner be held jointly and severally liable with the said William C. Rowland for the said Rowland's (heretofore adjudicated) wrongful and fraudulent breach of his fiduciary duty.

(4)   That your petitioner be removed as trustee under the will of William G. Kable, deceased.

In all of these particulars the court's ruling was against Willson.  He was granted an appeal by this court which resulted in the reversal of the decree and the court in its opinion commended in high degree his actions and conduct in the matters which were the subjects of the petition.  The style of this case is *Willson* v. *Kable*, 177 Va. 668, 15 S. E. (2d) 56.

Speaking of Willson and the interests of the trust estate this court said:

"What is best for the trust estate?  Willson has been connected with the school since 1894, a period of forty-six years.  He is a successful merchant and banker.  His is an intimate knowledge of the school; its needs and problems are well known to him.  He has observed it when it was at a low financial status, and he has seen it prosper.  When the school was in need of money he endorsed paper for it to the extent of $20,000.  There is not a particle of evidence tending to show that he is incapable or unfit to act as trustee.  There is none that reflects upon his character or tends to show that he is not honest or moral.  He has been a great asset to the trust, and the school through the many

years of his connection. With his experience he will continue to be an asset."

\*     \*     \*     \*     \*     \*

"Upon the whole record, which is entirely too voluminous, we are of opinion that Willson's conduct has been above reproach and that he has been guilty of no infidelity regarding his duties as trustee of the estate or as director or officer of the corporation. The evidence fails to justify his removal as trustee."

Here we have this court saying that there is not a particle of evidence even tending to show that Willson is incapable or unfit to act in the capacity in which he was chosen by the testator. And further that there is no evidence which reflects upon his character, or even tends to show that he is not honest or moral. In solemn words he is declared to have been a great asset to the trust, and the institution through the many years of his connection with it. It is declared that his experience will continue to make him an asset. In the closing paragraph of the opinion it is said that his conduct has been above reproach and that he has been guilty of no infidelity to his duties in any capacity, in which he acted, and that the evidence in no wise justifies his removal as trustee.

We have emphasized these portions of the opinion because they warrant, in our judgment, the statement that it is the strongest case which we have seen, or which has been cited to us, requiring the reversal of the decree of the trial court in the immediate case.

There are many cases from this and other courts of last resort that are directly in point but we will only mention a few of them, and quote from them scantily, else this opinion would be prolix.

When the issues, made by the first petition and the denial of its charges, terminated in favor of Willson he filed his petition asking that the Kable estate be required to pay the costs of the proceedings and the counsel fees which he had paid or had obligated himself to pay in his defense. The

appellees here filed a demurrer which was sustained by the trial court. Thus, as was said in the brief of the appellees, the issue is a narrow one. "It deals entirely with the right of a testamentary trustee to recover, in excess of his taxable costs, counsel fees and other expenses after he has successfully defended a proceeding instituted by one of the beneficiaries to charge him with a personal financial liability and obtain his removal for acts committed in the course of his trusteeship."

In Perry on Trusts and Trustees (7th Ed.) Section 894, is this statement of the law:

"The general rule is that trustees shall have their costs either out of the trust fund, or from the *cestuis que* trust personally, (upon the principle that he should be reimbursed all the expenses to which he has been put without his own fault by reason of his being a trustee). If there is a fund within the control of the court, they may have their costs as between solicitor and client. Where there is no fund within control of the court, if the *cestuis que* trust bring the trustees before it to obtain a direction as to the rights of the parties, or the mode of administration, and the trustees are free from all blame or fault, they are entitled to costs against the *cestuis que* trust personally, to be taxed as between solicitor and client. The reason involved in the rule is this: trustees have no beneficial interest in the trust property. They hold it for the accommodation and benefit of others. If they perform their duties faithfully, and are guilty of no unjust, improper or oppressive conduct, they ought not in justice and good conscience to be put to any expense out of their own moneys. If, therefore, they are brought before the court without blame on their part, they should be reimbursed all the expense that they incur, and allowed their costs as between solicitor and client for this purpose. So, if it appears to the court by the pleadings or otherwise that they have sustained charges and expenses beyond the costs of the suit, as between solicitor and client, the court will order such further expenses properly incurred to be paid to them; * * * "

The following cases from this court are in harmony with the above statement of the law: *Lindsay* v. *Howerton*, 2 Hen. & M. (12 Va.) 9; *Cochran* v. *Richmond, etc., R. Co.*, 91 Va. 339, 21 S. E. 664; *Berkeley* v. *Green*, 102 Va. 373, 46 S. E. 387, 388; *Patterson* v. *Old Dominion Trust Co.*, 156 Va. 597, 159 S. E. 168, 172; *Stull* v. *Harvey*, 112 Va. 816, 72 S. E. 701, 703.

In the *Stull* v. *Harvey case, supra,* this is said: "It is the duty of the trustee to protect the trust estate from waste, invasion, or trespass, and, of course, it would be his duty to defend all suits brought against him with respect to the trust subject. In the performance of these duties a trustee would be justified in employing counsel and charging their compensation to the trust fund."

In Bogert on Trusts and Trustees, section 525, this is said: " * * * If the attempt to remove the trustee fails, it is proper to order payment of costs out of the trust estate * * * ."

See also Perry on Trusts and Trustees, (7th Ed.) section 910, 65 Corpus Juris (Trusts), section 490.

A leading case on the subject is that of *Jessup* v. *Smith*, 223 N. Y. 203, 119 N. E. 403. It arose from litigation coming out of the will of the late Samuel J. Tilden. There was a proceeding for the removal of Smith who was a testamentary trustee. He was charged with gross misconduct and with being inefficient. The court of appeals of New York said, through the late Mr. Justice Cardozo, then judge:

"The question remains whether the services were beneficial in the preservation of the trust. We have no doubt that they were. Mr. Smith had been named in the will as trustee. He owed a duty to the estate to stand his ground against unjust attack. He resisted the attempt to wrest the administration of the trust from one selected by the testator and to place it in strange hands. He did more. By his cross-application he procured the appointment of a third trustee, and broke a deadlock which threatened the safety of the estate. Plainly, such services, if paid for by the trustee

personally, would justify reimbursement on his accounting before the surrogate. * * * There must, therefore, be some other remedy where such payment is impossible. If that were not so, there would be no safety either for an indigent trustee or for the estate committed to his care. The law is too far sighted to invite such consequences."

In the case of *Lycan* v. *Miller*, 56 Mo. App. 79, involving similar issues, this was said:

"As there was no substantial evidence before the court that the trustees had mismanaged or wasted the trust estate, nor of any fraudulent conduct on their part which would have authorized their removal, the court was warranted in allowing them reasonable counsel fees in defending the two successive actions brought against them by the plaintiffs."

In the case of *Solimine* v. *Hollander*, 129 N. J. Eq. 264, 19 A. (2d) 344, this was the question before the court for determination: Are corporate directors entitled to indemnification or reimbursement for their reasonable expenses incurred by them in defending a stockholders suit in which an accounting was sought against them because of alleged dereliction of duty and in which suit they were vindicated? The court said:

"The point of the decision seems to be that the referee, who heard the case, viewed a director's liability to suit as one of the assumed hazards of his office. Notwithstanding this the court expressed the view that there might be cases in which because the directors successfully defended themselves that there might exist a 'legal obligation' resting on the corporation in the wider sense of that phrase and that in such a situation the corporation may pay the reasonable expenses of its directors. I do not consider that liability to charges of misconduct in office is one of the hazards inhering in the office of a director of a company and that such hazard is impliedly assumed in the acceptance of that office. That is no more true in the case of a director, who is essentially a trustee, than in the instance of an executor or testamentary trustee. When it is sought to surcharge a trustee of the latter class for alleged negligence, wastage, misman-

agement, or fraud or where his removal is sought for these acts of misconduct, and he prevails on the merits, the expenses of his successful resistance are invariably paid out of the estate being administered, and this is done without inquiry into the question of whether or not his defense resulted in some benefit to the trust. Such benefit is necessarily present in the circumstance that by defending the action against him the executor or testamentary trustee is effectuating the testator's intent that the estate be administered by the hands to which it has been confided.

\*  \*  \*  \*  \*  \*

"I, therefore, hold that the directors and officers who have successfully defended this suit on the merits and who have demonstrated honesty and loyalty to their trust are entitled to be reimbursed by the corporate defendant for their reasonable expenses and counsel fees either already expended or incurred in connection with this cause. \* \* \* "

In the case of *Harris* v. *Gamble*, 7 Chancery Div. L. R. 877-78, this was said by James, L. J.:

"It is agreeable to me personally that we are not obliged to put a trustee in a position which would be disgraceful to the administration of justice. The court is very strict in dealing with trustees, and it is the duty of the court, as far as it can, to see that they are indemnified against all expenses which they have honestly incurred in the due administration of the trust. Lord Romilly says that the trustee here defended himself against a false charge, and was in the same position as any other person who so defended himself; but it was a charge against the trustee in respect of acts done by him in the due administration of the trusts; and his defense was beneficial to the trust estate, for it has been decided that the compromise was an advantageous one. In such a case it is impossible to split the defense, and say that because the trustee at the same time defended his own character he is only to have a part of the costs."

The charges of dereliction against Willson were in respect of acts done by him, and acts not done by him, in the due ad-

ministration of the trusts which were committed to him, and this court has held that he was ."a great asset to the trust",, and that under his leadership and good business judgment the school prospered.

In the face of this array of the most highly respectable authority and in view of the very right of the matter, so plainly and forcibly brought to view, by the quotations from the opinion in the case of *Willson* v. *Kable, supra*, we have no hesitancy in holding that the trial court erred in sustaining the demurrer to the petition and in further holding that the appellant is not entitled to his costs in this behalf expended and to the counsel fees paid or contracted to be paid by him as stated in his petition, to be paid by the Kable estate, and this case is remanded for further proceedings in harmony with this opinion.

*Reversed and remanded.*

CAMPBELL, C. J., and GREGORY, J., dissenting.

HUDGINS, J., concurs in result.