## 𝔖taunton

BESSE DASCHER, INDIVIDUALLY, ETC., ET AL. v.
GERALD DASCHER, ET AL.

September 6, 1968.

Record No. 6734.

Present, All the Justices.

*Thomas S. Word, Jr. (Sidney L. Berz; William D. Martin, III; Berz & Lubman; McGuire, Woods & Battle,* on brief), for appellants.

*Alan G. Fleischer (Hirschler and Fleischer,* on brief), for appellees.

BUCHANAN, J., delivered the opinion of the court.

The main question presented on this appeal is whether the trustee under the will of Irving R. Dascher, deceased, had authority to sell fifty-five shares of the capital stock of Lady Byrd Hat Company, Inc. (Lady Byrd), owned by the testator at the time of his death. The relevant facts are not in dispute.

Irving R. Dascher, the testator, died on August 6, 1961, leaving to survive him his wife, Besse Dascher, and two sons, William and Gerald, and five grandchildren, being children of the two sons. He

left a will dated June 12, 1958, and duly probated, by which he disposed of his comparatively small estate.*

In Clause III of the will he gave all of his stock in Lady Byrd to his trustee, Harry L. Cohn, appointed by the will, in trust "for the benefit of my wife, Besse during her lifetime."

Testator owned fifty-five shares of Lady Byrd stock. At testator's death this corporation had an authorized capital stock of five hundred shares, of which one hundred ten were issued and outstanding, fifty-five shares of which, as stated, were owned by the testator and fifty-five shares by his son, William Dascher.

At the date of testator's death, August 6, 1961, he was president of the company; his wife Besse was vice-president and William was secretary and treasurer. On August 7, 1961, William Dascher was elected president, director and chief operating officer; Besse Dascher was elected vice-president, and Sidney L. Berz secretary and director.

On June 1, 1962, the trustee sold and transferred the fifty-five shares of stock owned by the testator to Lady Byrd, the corporation, in return for a subordinated debenture of the corporation in the sum of $10,000, with interest at $5\frac{1}{2}\%$, dated June 1, 1962, and redeemable in 1972. These fifty-five shares have since been held by the corporation as treasury stock. In March, 1963, a 100% stock dividend was declared, giving an additional fifty-five shares to William Dascher, the holder of all of the outstanding stock of Lady Byrd.

In May, 1966, Gerald Dascher, testator's other son, instituted this suit for a declaratory judgment seeking an adjudication that the purchase by Lady Byrd of the fifty-five shares of stock owned by the testator was contrary to the terms and conditions of the will and, therefore, illegal and void, and a direction that said shares be returned to the trust provided for by the will and held in accordance with the terms thereof.

After answers were filed and the facts stated above were stipulated, the court held in a written opinion that the sale of the stock was contrary to the direction to the trustee in Article III of the will, which was not changed by Article VII of the will, and accordingly decreed that William Dascher and the corporation transfer and deliver to the trustee the said fifty-five shares of Lady Byrd stock and that a new certificate be issued to the trustee therefor, and that the trustee

*The inheritance tax return indicated his net estate was $8,948.16. He appointed his wife and Harry L. Cohn as executors "either or both of whom may qualify." Only his wife, Besse, qualified as executrix.

surrender to Lady Byrd the said debenture and individually repay to the corporation any interest paid by it on said debenture.

This appeal is from that decree and the assignments of error are that the court erred in ruling that the trustee did not have power to sell the stock and in refusing to hear extrinsic evidence of relevant facts and circumstances surrounding the testator at the time of executing his will.

The trial court held that the intent of the testator may be determined from the will itself without the aid of extrinsic evidence. With that conclusion we agree; but we disagree with the conclusion that the will forbids the sale.

"* * In determining the powers of a testamentary trustee, the court must look at the will as a whole. * *." *In Re Wellman Estate*, 119 Vt. 426, 432, 127 A.2d 279, 283.

"No particular form of words is necessary in an instrument creating a trust to create a power of sale, and no technical, direct, precise, or express words are necessary. * *

"If the intention is apparent, the power will be implied, and any form which shows an intention to create such power will necessarily confer it on the trustee. So, any form of words from which a power to convey can be inferred will authorize a sale. It may be inferred from the general tenor of the instrument, or from the fact that a trustee is empowered and directed to do certain things of which the sale of the trust property is necessarily a condition precedent; and even though no express power of sale is contained in the instrument creating the trust, such a power will be implied when necessary in order to carry out the purpose of the trust and the duties imposed on the trustee." 90 C.J.S., Trusts, § 288, pp. 424-25.

Clauses III and VII of the will are the clauses which create the trust and define the powers of the trustee. By other clauses the testator gave the remainder of his property to his wife, subject to an option to his sister to purchase a lot in Brooklyn, New York.

Clause III, as stated, gave testator's fifty-five shares of Lady Byrd stock to his trustee "IN TRUST for the benefit of my wife, Besse during her lifetime." These fifty-five shares of Lady Byrd stock, valued at $5,500, constituted the major part of testator's estate. No dividend had ever been paid on this stock since the organization of the company in 1925. The testator, of course, knew that if this situation continued there would be no benefit to his wife from the mere holding of the stock.

There is indication in the language of Clause III that the testator had this condition in mind. He directed his trustee to collect all the income from this stock "by way of dividends or otherwise," and pay the net amount to his wife. At her death the trustee was directed to offer to William at its book value "the stock then held by him." The purchase price to be paid by William was to be "the number of shares then held by my Trustee multiplied by the book value per share." The money received by the trustee from the sale of the stock was to be paid equally to sons Gerald and William, or their issue.

Clause VII of the will, in relevant part, was as follows:

"VII. I confer upon my Executor and Trustee the following discretionary powers:

"(a) To retain either permanently or for such period of time as it [sic] may elect, any assets, including the capital stock of any closely held corporation [which describes Lady Byrd], which, at any time, shall come into its possession as a part of my Trust Estate, whether such assets are or are not of the character approved or authorized by law for investment by fiduciaries;

"(b) To invest and reinvest my Trust Estate in such notes, bonds, * * debentures, * * as it may deem best * *; to alter, change and vary such investments and reinvestments; * * it being intended that my Trustee may assume and maintain a cash position for my Trust Estate so long as it deems the then situation such as to render this course wise;

* * *

"(e) To sell and dispose of any real or personal property which I own at my death or which at any time constitutes a part of the trust corpus at such price and upon such terms as it may deem proper and to execute proper deeds; * *."

Then, in concluding the long list of powers given to the trustee, the testator added:

"It is my intention to give to my Executor and Trustee full management and control of my estate, the powers herein enumerated being by way of illustration and not by way of limitation."

When it is remembered that the only "Trust Estate" that existed was composed of the fifty-five shares of Lady Byrd stock; that the testator expressly gave to his trustee the power [paragraph (b)] to invest

and reinvest his trust estate in debentures; that the testator explicitly gave to his trustee [paragraph (e)] the power to "sell and dispose" of any personal property which "at any time constitutes a part of the trust corpus"; and that after enumerating the broad powers expressly conferred on his trustee, the testator asserted by way of emphasis that it was his intention to give his trustee full management and control of his estate, it follows as a necessary conclusion that the trustee had the right and power to sell the fifty-five shares of stock and to accept the $10,000 debenture as the purchase price therefor.

Accordingly we hold that the trustee had authority under the will to sell the fifty-five shares of Lady Byrd stock and to accept the described debenture in payment.

The decree appealed from is therefore reversed and the provisions thereof requiring the transfer and delivery of said shares back to the trustee and the surrender to Lady Byrd of said debenture and repayment of interest thereon are set aside and annulled; but the requirements in said decree with respect to qualifying and accountings are not affected and they shall remain in force and effect, after the fixing of a new date for compliance.

*Reversed and remanded.*