Present: Compton, Lacy, Hassell, Keenan, Koontz, and Kinser, JJ.

LYNN-HALL WARD, ET AL.

v.    Record No. 972622

NATIONSBANK OF VIRGINIA, N.A., ET AL.

OPINION BY JUSTICE ELIZABETH B. LACY
November 6, 1998

THE LIFE INSURANCE COMPANY OF VIRGINIA

v.    Record No. 972640

LYNN-HALL WARD, ET AL.

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Rayner V. Snead, Judge Designate

In this case, the beneficiaries of a trust filed a bill of complaint against the trustee alleging that the trustee breached the trust agreement by executing a purchase option, agreeing to a deed of trust on the trust property securing funds lent to the lessee/purchaser for development of the property, and subsequently conveying the trust property. Because we conclude that the trustee had the authority to grant the purchase option and exercised that authority in a prudent manner, and that the deed of trust on the trust property provided a benefit to the trust, we will affirm the judgment of the trial court.

I.    FACTS

In March 1965, J. L. Hartman and Pauline H. Hartman created a trust for the benefit of their grandchildren, Lynn-Hall Ward, Robert Lee Walker, Jr., Margaret M. Martin, and

Anne Walker Durrett (collectively "the Beneficiaries"). Virginia National Bank, NationsBank of Virginia, N.A.'s predecessor, was named as trustee (the Trustee). The trust property was a 29.26-acre tract of land located in Albemarle County.

In May 1969, the Trustee leased the trust property to Wendell W. Wood. The lease contained an option to purchase the property for $750,000 at the expiration of the 25-year lease term. In December 1972, Wood assigned his interest in the lease to Rio Associates Limited Partnership (Rio).

In conjunction with the assignment, the Trustee, Wood, and Rio executed an agreement (1972 agreement) in which the Trustee agreed to subordinate its fee interest in the trust property to first lien deeds of trust securing loans to Rio for development of the property. In return, Rio and Wood agreed to provide collateral security to insure performance of their obligations. The 1972 agreement further provided that when the first development loan was obtained, the lease would be amended by changing the option to purchase clause to a contract to purchase with the deed of conveyance naming Rio or its successors as the grantee.

Between 1976 and 1994, Rio developed the trust property into Albemarle Square Shopping Center. Development of the property was financed by three loans totaling over $5 million from The Life Insurance Company of Virginia (Life of

2

Virginia). When the first loan for $4.1 million was obtained in June 1976, Rio exercised the purchase option in accordance with the 1972 agreement and agreed to close on the purchase of the trust property and pay the purchase price in December 1994 (contract of sale). Also in accordance with the 1972 agreement, the Trustee executed a subordination agreement, subordinating its fee interest to a deed of trust securing Life of Virginia's loan to Rio. Subsequent development loans were similarly secured.

In 1987, the Beneficiaries told the Trust manager, David P. Masich, that they felt the $750,000 purchase price stated in the lease was too low. Masich subsequently informed the Beneficiaries in October 1988 that the sale of the property at the end of the lease was "a done deal."

In the spring of 1994, the Beneficiaries retained E. Randall Rawlston, an attorney, to represent them. Rawlston told the Beneficiaries that they could file a suit to enjoin the sale of the property. One of the legal theories under consideration as a basis for such litigation was that the Trustee had breached its fiduciary duty when it entered into the purchase option. After conferring with another attorney, Rawlston told the Beneficiaries that additional work necessary to analyze whether the trust agreement authorized the Trustee to enter into a purchase option required a retainer of $2,000. The Beneficiaries decided not to pursue the matter because

3

they did not want to incur the cost associated with the additional work.

Ralston also advised the Beneficiaries that they could defer capital gains taxes of $250,000 if the sale of the trust property was structured as a like-kind exchange. Because the Trustee's cooperation was necessary to accomplish this type of exchange, the Beneficiaries decided not to institute legal proceedings to enjoin the sale of the trust property and to proceed with the sale as a like-kind exchange. They did intend to pursue litigation, however, after the transaction was complete.

The closing on the sale of the trust property was originally scheduled for December 1994 but was delayed to accommodate the like-kind exchange. In conjunction with the closing, Life of Virginia agreed to loan Rio an additional $6.9 million, part of which was to be used to pay off the prior loans. As with the previous loans, the Trustee subordinated its fee interest, and on December 24, 1994 the Trustee and Rio executed a deed of trust on the property to Life of Virginia to secure the loan (1994 Deed of Trust). On January 5, 1995, the Trustee executed a deed conveying the property to Rio (1995 deed or deed of conveyance).

## II. PROCEEDINGS

In November 1995, the Beneficiaries filed a bill of complaint against the Trustee, Rio, and Life of Virginia,

4

alleging that the Trustee breached its fiduciary duty and the terms of the trust agreement by granting a purchase option in the 1969 lease. The Beneficiaries asked the court to void the January 1995 conveyance of the trust property from the Trustee to Rio, to void the December 1994 Deed of Trust granted by the Trustee and Rio to Life of Virginia, and to remove NationsBank as Trustee of the trust.

The Trustee, Rio, and Life of Virginia responded, denying, inter alia, any breach of fiduciary duty and asserting that the 1969 lease and option to purchase, the 1976 contract of sale, the 1994 Deed of Trust, and the 1995 deed of conveyance were valid. They also raised the affirmative defenses of consent, ratification, and affirmation of the 1995 deed by the Beneficiaries and asserted that the Beneficiaries were estopped from challenging the 1995 deed of conveyance. The Trustee sought attorney's fees. Rio and Life of Virginia filed a cross-bill for sanctions and attorney's fees under Code § 8.01-271.1.

A demurrer and motions for summary judgment were filed. Prior to trial, the trial court denied the demurrer, but granted the Beneficiaries partial summary judgment, holding that the grant of the purchase option in the 1969 lease was a breach of the trust agreement because it was not expressly authorized by the agreement and could not be inferred from or implied by the language of the agreement. The trial court

also concluded that the breach was not excused under the exception set out in § 190, comment k, of the Restatement (Second) of Trusts, because the trust property could have been advantageously sold to Wood in 1969 without the purchase option.  The trial court held that none of the other issues could be decided on summary judgment and denied the remaining motions.

Following an evidentiary hearing, the trial court entered an order holding that the 1994 Deed of Trust and the 1995 deed of conveyance were valid, that the Beneficiaries had ratified, acquiesced, and consented to the 1995 deed and could not challenge the deed as a breach of trust, and that the Beneficiaries were estopped from challenging the 1995 deed. The trial court declined to remove NationsBank as the Trustee, awarded the Trustee attorney's fees, and denied Rio and Life of Virginia's cross-bill for sanctions and attorney's fees under Code § 8.01-271.1.

The Beneficiaries appealed, raising nine assignments of error.  The Trustee, Rio, and Life of Virginia assigned cross-errors.  Life of Virginia filed a separate appeal challenging the denial of attorney's fees pursuant to Code § 8.01-271.1. We granted the parties' appeals on all assignments of error and cross-error and consolidated the two appeals for our consideration.  A number of the assignments of error and cross-error are dispositive of other issues.

## III.  OPTION TO PURCHASE

The trial court held that the trust agreement was not ambiguous, that it did not expressly authorize the Trustee to grant an option to purchase the trust property, and that the power to grant an option to purchase would not be implied because an option to purchase "involves much more discretion in the determination of a purchase price as in this case before the sale actually occurs under the option."  The Trustee, Rio, and Life of Virginia assert that the trial court erred in holding that the power to grant an option to purchase should not be implied from the terms of the trust agreement. Alternatively, they argue that that trial court erred in holding that the trust agreement was unambiguous and denying the use of parol evidence to ascertain the intent of the grantor.

In refusing to find that the language of the trust agreement was sufficient to include an option to purchase, the trial court relied on § 190, comment k, of the Restatement (Second) of Trusts.  Comment k, which the trial court described as stating "the common law rule," provides that "[w]here by the terms of the trust a power of sale is conferred upon the trustee, it is ordinarily not proper for the trustee to give an option to purchase property." Restatement (Second) of Trusts § 190 cmt. k (1959).  The trial court's reliance on this comment was misplaced in this case.

Section 190 of the Restatement is entitled "Power of Sale" and the discussion in comment k addresses a trustee's power to grant an option to purchase based solely upon the expressly granted power to sell the trust property. See also 3 William F. Fratcher, Scott on Trusts § 190.8, at 117-18 (4th ed. 1988). In this case, however, the trust provision expressly granting the Trustee the power to sell the trust property is not the only provision of the trust agreement which is relevant in determining whether the Trustee has the power to grant a purchase option.

In determining the scope of a trustee's powers, we seek to effectuate the intent of the grantor as expressed in the terms of the trust. Frazer v. Millington, 252 Va. 195, 199, 475 S.E.2d 811, 814 (1996). This process requires consideration of the document as a whole. Id.; Dascher v. Dascher, 209 Va. 167, 169, 163 S.E.2d 144, 146 (1968). Although not explicitly identified in the trust agreement, authority to take certain actions may be implied if the intention to create such power is evident, the power may be appropriate or necessary to carry out the purposes of the trust power, and the power is not forbidden by the trust agreement. Frazer, 252 Va. at 199, 475 S.E.2d at 814; Dascher, 209 Va. at 169, 163 S.E.2d at 147; Restatement (Second) of Trusts § 186 cmt. d.

As recognized by the trial court, the trust agreement vested very broad powers in the Trustee.[1] Of particular relevance here is not only the power granted in Article VI of the trust agreement to sell and lease, but also the authority granted in subsection (m) of that Article to

> do all other acts and things not inconsistent with [the trust agreement which the Trustee] may deem necessary or desirable for the proper management [of the trust] <u>in the same manner and to the same extent as an individual might or could do with respect to his own property.</u>

(emphasis added). Any reasonable interpretation of this language would include the ability of the Trustee to grant an option to purchase. Therefore, we must determine whether an option to purchase is appropriate or necessary to carry out the purpose of the trust.

All parties agree that the purpose of this trust was to provide for the education of the grantors' grandchildren. The trust agreement states that it is the grantors' "primary concern in the creation of this trust to provide each beneficiary with an adequate and sufficient education." To effectuate this purpose, the trust agreement gave the Trustee

---

[1] Article VI of the trust agreement granted the Trustee the power to "dispose" of the trust property by "sale, exchange, or otherwise as and when it shall deem advisable;" to dispose of the property "upon such terms and conditions as it, in its absolute discretion, may deem advisable, at either public or private sale, either for cash or deferred payments or other consideration, as it may determine;" and to "lease any or all of the real estate . . . upon such terms and conditions as said Trustee, in its sole judgment and discretion, may deem advisable."

9

broad discretion to manage the trust property in a way which would insure that sufficient assets would be available throughout the period needed to complete the grandchildren's education.[2]  The Trustee's use of an option to purchase is in no way inconsistent with this purpose.  Considering all the provisions of the trust agreement, we conclude that the language of the agreement is sufficient to imply that the Trustee was given the power to grant an option to purchase and that there is no basis to exclude use of the purchase option as a mechanism for achieving the purposes of the trust.

This conclusion, however, does not end our inquiry.  The authority to undertake a specific action and the proper exercise of that authority are distinct considerations.  The decision to grant a purchase option is at the discretion of the Trustee and, even though a trustee's discretion is generally broadly construed, "his actions must be an exercise of good faith and reasonable judgment to promote the trust's purpose."  NationsBank of Virginia, N.A. v. Grandy, 248 Va. 557, 561, 450 S.E.2d 140, 143 (1994).  The trustee must "exercise the same degree of discretion in the management of the trust that a prudent man of discretion and intelligence would exercise in his own like affairs."  Parson v. Wysor, 180 Va. 84, 89, 21 S.E.2d 753, 755 (1942).

---

[2] At the time the trust was created, one of the beneficiaries had not yet been born and the other three were between three and eight years of age.

10

The trial court considered whether the Trustee's action in this case was prudent.  Its analysis was made in the context of determining whether the Trustee's action qualified for the exception to the Restatement rule set out in § 190 comment k.  The exception requires a finding that "the grant of the option was prudent."  Regardless of the purpose for the prudence review, the analysis and the standard to be applied remain constant and, therefore, the trial court's conclusion in this regard is relevant to the inquiry before us.

The trial court concluded that the Trustee's action in granting the purchase option was prudent.  Based on the evidence before it on the motions for summary judgment, the trial court found that

> there is no evidence that the lease with the option to Mr. Wood may not have been prudent in light of the financial analysis advanced by the [Trustee]. The lease of the property with the option to purchase appears to have rendered greater financial benefit to the beneficiaries than an outright sale of the property to Wood would have rendered.

The Beneficiaries disagree with this conclusion and argue that the actions of the Trustee in this regard were not prudent because the option contained no escalation in the purchase price over the course of the 25-year term, no evidence of how the sales price was reached in 1969, and no provision for evaluating the market value of the property at the time of sale at the end of the lease.  While the Beneficiaries may be correct about the state of the record

11

regarding these items, on appellate review, the factual findings regarding the Trustee's actions made by the trial court in this case can be set aside only if there is no evidence in the record to support them. Code § 8.01-680.

The financial analysis referred to by the trial court was that of the Trustee's expert witness, who compared the value of the trust following the 1995 deed of conveyance with what the value of the trust would have been if the trust property had been sold outright in 1969. Using a $200,000 purchase price, the highest price Wood indicated he would have paid for the land in 1969, and taking into account the actual disbursements to the Beneficiaries and a reasonable return on the trust assets, the expert testified that the value of the trust in January 1995, if sold in 1969, would have been $85,000. In contrast, as calculated by the expert, the actual value of the trust following the 1995 deed of conveyance was $905,830.46. This evidence supports the trial court's conclusion that the lease with the option to purchase "rendered greater financial benefit to the Beneficiaries" than had the trust property been sold outright.

Furthermore, the record reveals that in 1969 the trust property was swampy wetland, producing no income, and that only part of the property was zoned for business purposes. The 1969 assessed value of the property was $281,133 which included an adjustment to reflect the pre-1977 Albemarle

12

County policy of assessing real estate at 15% of the fair market value. Even though Wood testified he wanted to purchase the property in 1969, the most he was willing to pay for it was $200,000. Finally, he testified that he would not have leased the property without an option to purchase it. These circumstances support the trial court's determination that the Trustee's actions in setting a sales price of $750,000 with an income stream in excess of $400,000 over the 25-year term of the lease were prudent.

In summary, we conclude that under the terms of the trust agreement, the Trustee had the implied power to grant an option to purchase, that an option to purchase was not inconsistent with effectuating the purpose of the trust, and that the manner in which the Trustee exercised its authority to grant the purchase option was prudent. Because the Trustee did not breach the trust agreement in granting the option to purchase, the Beneficiaries' challenge to the 1995 deed based on the 1969 purchase option as amended in 1976 must fail. Accordingly, for the reasons stated, we will affirm the trial court's decision that the 1995 deed of conveyance was valid.

## IV. 1994 DEED OF TRUST

In light of our holding that the exercise of the purchase option by the Trustee was valid and not a breach of the trust agreement, we need not address the Beneficiaries' assignments of error I, III, and that portion of II relating to the

13

validity of the 1995 deed of conveyance based on the 1976 contract of sale; assignment of error IV relating to consent, ratification and affirmation of the 1995 deed of conveyance; assignment of error V relating to equitable estoppel; and the Trustee's remaining assignments of cross-error. We do, however, address the Beneficiaries' claim that the trial court erred in holding that the 1994 Deed of Trust on the trust property was valid.

The Beneficiaries assert that the 1994 Deed of Trust executed by the Trustee in favor of Life of Virginia was invalid because the trust agreement only allowed the Trustee to place a deed of trust on the trust property for the benefit of the trust. The Beneficiaries contend that the loan secured by the 1994 Deed of Trust was for improvements to the property and those improvements did not and were not intended to benefit the trust.

The record shows, however, that the 1994 Deed of Trust was part of the plan worked out to develop the property and secure financing for the development. Consequently, whether the 1994 Deed of Trust benefited the trust must be evaluated within the context of that plan.

In 1969, the trust property was swampy wetland with "scrub trees" and a dilapidated, uninhabited house on it. Wood testified he tried to purchase the property outright, but the Trustee refused, requiring instead a lease which would

14

provide an income stream over an extended period of time. Wood hoped to develop the property himself, even though the Trustee refused to include a provision in the lease that it would agree to subordinate its fee interest to secure development financing.

After struggling for a few years with zoning and financing, Wood was approached by the principals of Rio with an offer to undertake the development of the trust property as a shopping center. The shopping center development was feasible for Rio only if the fee simple interest could be "put up" as part of the financing. Negotiations ensued, resulting in the assignment of the lease and option to purchase from Wood to Rio and the execution of the 1972 agreement. As a condition for subordinating its fee interest, the Trustee required removal of "all risks" from the Trustee's standpoint. Accordingly, the 1972 agreement provided a guarantee of the rental income and purchase price by requiring Rio and Wood to acquire a line of credit for the rent and a certificate of deposit for the purchase price. Additionally, the Trustee was relieved from all risk related to rezoning, sewer, road access, environmental concerns, in short, from all risks connected with "anything [Rio] might do with the property."

The 1994 Deed of Trust was part of the financing and development plan initiated by the 1972 agreement. In that agreement, the Trustee agreed to subordinate its fee interest

in the future in exchange for a "virtually risk-free" position while insuring income to the trust over a period of years. Without that agreement, the trust had only Wood's personal obligation to pay over $13,000 a month for non-income producing property. This change in position benefited the trust.

Based on the facts we have just recited, we conclude that the 1994 Deed of Trust was executed in performance of the 1972 agreement. As such, it was a contributing factor to the overall benefit which the 1972 agreement brought to the trust. Therefore, the trial court did not err in holding that the 1994 Deed of Trust was valid.

## V.   REMOVAL OF THE TRUSTEE

In their assignments of error VI and VII, the Beneficiaries argue that the trial court erred in not removing NationsBank as Trustee because the record "is replete" with evidence that the Trustee acted dishonestly, negligently, and engaged in misconduct in its management of the trust and in its dealings with the Beneficiaries. As support for this argument, the Beneficiaries contend that the record shows, contrary to the trial court's finding, that the 1969 purchase option damaged the trust and did not enhance or benefit the trust.

The Beneficiaries assert that damage to the trust as a result of the 1969 option was evident because, at the time of

the sale in 1995, the assessed value of the trust property without the improvements was approximately $4 million. Therefore, according to the Beneficiaries, granting the purchase option in 1969 caused the trust to suffer a substantial loss because the sales price was only $750,000. The Beneficiaries thus conclude that the record cannot support a holding that the purchase option benefited the trust.

In Part III of this opinion, we discussed the evidence which supported the trial court's pre-trial determination that the Trustee acted prudently when it granted the purchase option. That evidence likewise provides an adequate basis for the trial court's post-trial determination that the trust was not harmed by the purchase option and that the option enhanced the trust.[3]

As additional grounds for removal, the Beneficiaries recite here, as they did in the trial court, various actions of the Trustee in relation to the execution of the 1969 lease and option to purchase, 1976 contract of sale, deeds of trust, the 1995 deed of conveyance, and information relayed to the Beneficiaries regarding the status of the purchase option.

Removal of a trustee is within the discretion of the trial court. The trial court must determine whether it is in

---

[3] The evidence upon which the trial court based its pre-trial finding was presented to the court by affidavit and exhibits prepared by the Trustee's expert. The same evidence was subsequently presented ore tenus during trial through the expert's testimony.

the best interest of the trust for the trustee to be removed. Clark v. Grasty, 210 Va. 33, 37, 168 S.E.2d 268, 271 (1969). The trial court reviewed all of the Trustee's actions and their impact on the trust, but declined the Beneficiaries' request to remove NationsBank as trustee. Based on our review, we cannot conclude that this decision was an abuse of discretion.

## VI. ATTORNEY'S FEES

The Beneficiaries assign error to the trial court's determination that the Trustee was entitled to an award of attorney's fees to be charged against the trust. The Beneficiaries challenge both the basis for and the amount of the award.

Citing Willson v. Whitehead, 181 Va. 960, 965, 27 S.E.2d 213, 216 (1943), the Beneficiaries assert that a trustee is entitled to attorney's fees only if the litigation was initiated "without his own fault." Here, the Beneficiaries assert, the basis for the litigation was the Trustee's action in granting the purchase option, and therefore the Trustee is not entitled to attorney's fees. The Beneficiaries misread Willson.

As applied by the Beneficiaries, Willson would bar an award of attorney's fees in every case naming the trustee as a respondent because virtually every case challenging the administration of a trust is based on some action taken by the

trustee.  The correct application of <u>Willson</u> is that a trustee, who has the duty to defend the actions challenged as detrimental to the trust, is entitled to attorney's fees when he has been called on to defend himself against a charge of dereliction of duty and there is neither substantial evidence that the trustee wasted or mismanaged the trust nor evidence of any conduct warranting the removal of the trustee.  <u>Id</u>. at 967, 27 S.E.2d at 217.

In this case, the Trustee was required to defend against claims of dereliction of duty in granting the option to purchase the trust property.  As we have held, this action along with the other actions of the Trustee under attack in this case did not damage the trust but, in fact, benefited the trust.

The relevant legal principle we apply here is that where a trustee has a good faith basis for defending a suit challenging his actions as trustee, attorney's fees and costs incurred in the defense of the suit should be charged against the trust.  <u>Cooper v. Brodie</u>, 253 Va. 38, 44, 480 S.E.2d 101, 104 (1997).  In this case, the Trustee had a good faith basis for defending this law suit and there was no evidence of mismanagement, waste, or any other actions warranting removal of the Trustee.

The Beneficiaries also assert that not all the fees awarded were related to the defense of the trust, and that the

19

amount of the fees was unreasonable.  The claims made by the Beneficiaries and the relief sought related to documents and events which involved all of the respondents; therefore, the Trustee's attorneys were required to consult with and review pleadings and other matters generated by Rio and Life of Virginia.  The Beneficiaries produced no evidence to support their charge that the consultations were unnecessary or that the amount of the fees was unreasonable.  In contrast, the Trustee introduced expert witness testimony to establish the reasonableness of the time spent on the case and the amount of the fees.  Furthermore, the trial court reduced the Trustee's request for attorney's fees by $34,000.

Accordingly, we will affirm the trial court's judgment awarding attorney's fees to the Trustee.

### VII.  CODE § 8.01-271.1

Finally, we reject claims made by Life of Virginia and Rio that the trial court erred in refusing to impose sanctions against the Beneficiaries and their counsel pursuant to Code § 8.01-271.1.  The trial court concluded that this litigation was not frivolous.  A number of issues in this case, even though decided against the Beneficiaries, were subject to legitimate debate.  The relief requested by the Beneficiaries included vacating the 1995 deed of conveyance and the 1994 Deed of Trust.  Neither of these remedies could have been granted without joining Rio and Life of Virginia as parties.

20

In reviewing a trial court's award of sanctions pursuant to § 8.01-271.1, we apply an abuse of discretion standard. Oxenham v. Johnson, 241 Va. 281, 287, 402 S.E.2d 1, 4 (1991). Based on our review in this case, we conclude that the trial court did not abuse its discretion in denying the imposition of sanctions and attorney's fees.

## VIII.   CONCLUSION

The Beneficiaries' final assignment of error, that the trial court erred in adopting the respondents' findings of fact and conclusions of law, merits little attention.  We have reviewed and affirmed all the factual findings and legal determinations of the trial court necessary for the disposition of these appeals.  There is no need to review matters which have no bearing on the issues before us.

In summary, for the reasons stated in this opinion, we will affirm the judgment of the trial court.

Record No. 972622--Affirmed.
Record No. 972640--Affirmed.

21