Present:  All the Justices

GAIL STEPP, ET AL.

                                             OPINION BY
v.  Record No. 990404      JUSTICE LAWRENCE L. KOONTZ, JR.
                                          January 14, 2000
JAMES A. FOSTER, ET AL.

            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Kathleen H. MacKay, Judge


     In this appeal, the principal issue we consider is whether

the trustees of a trust who successfully defended an action by

beneficiaries of the trust are entitled to recover an award of

attorney's fees and expenses from the beneficiaries rather than

from the trust corpus.

                           BACKGROUND

     The Belmont Park Estates subdivision was created by

recorded plat in 1956 and consists of 140 residential lots

located in Fairfax County.  Marketing of the subdivision by the

owner/developer included reference to an adjoining 6.8-acre

parcel (hereafter Parcel A) as the site of a future clubhouse,

marina, dock, and other recreational facilities on Belmont Bay

in Occoquan Creek near its outlet into the Potomac River.

     A Declaration of Covenants for Belmont Park Estates was

recorded on September 1, 1960.  The covenants, which deal

primarily with restrictions on lot use and easements, do not

reference Parcel A or any other common property.  No provision

for a community association, either voluntary or mandatory, is

contained in these covenants.  Sometime after the covenants were recorded, the owner/developer abandoned the project leaving the majority of the lots in the subdivision unsold.

On February 24, 1973, the new owner of Parcel A transferred it to a trust, naming James A. Foster, Marvin E. Lear, and Marshall L. Ware, three resident lot owners, as trustees.[1]  The trust is for the benefit of all lot owners in Belmont Park Estates.  The trust deed recites various powers of the trustees, but imposes upon them no express duties to enforce those powers.  Among the powers given to the trustees is the power to appoint successor trustees, to restrict access to Parcel A to those lot owners in the subdivision who pay "a uniform charge as determined by the trustees . . . to pay expenses incurred in the ownership, maintenance and improvement of the property," and to create a governing board of lot owners.  The deed further provides that the trustees are "to have no personal liability as a trustee for any act or omission in connection with said property, except for . . . acts committed with malice or in bad faith."

---

[1]When Foster sought to acquire title to a vacant lot adjoining his home, he learned that Parcel A and the unsold lots in the subdivision had been acquired by the new owner some time after the owner/developer had abandoned the project.  Foster and the new owner subsequently entered into a joint venture to market the unsold lots.

Pursuant to the terms of the trust deed referencing a governing board, the trustees called a meeting of the lot owners and established Belmont Bay Community Associates (Associates), an unincorporated association. Gail Stepp, a resident lot owner, was elected as Associates' first president. The minutes and other records of Associates indicate that it was initially and principally concerned with the maintenance and improvement of Parcel A, frequently referred to as "the park," and the imposition of a maintenance fee for that purpose. Over time, however, Associates expanded the scope of its activities to include enforcement of the covenants, sponsoring civic and social functions, involvement in local planning and land use issues, and cooperation and encouragement of efforts by Foster and others to market the unsold lots in the subdivision. The widening scope of the activities of Associates caused some friction among resident and nonresident lot owners.

In November 1986, Stepp was named a successor trustee after Ware moved out of the subdivision. The deed in the record to this effect appears to have been filed on April 23, 1987. On September 29, 1993, apparently related to the growing discord among lot owners over the role and authority of Associates, Stepp and Marie Stepp, his wife, submitted a letter of resignation from Associates.

3

In 1994, the Belmont Bay Community Association, Inc. (the Association), a Virginia non-stock corporation, was chartered and assumed the duties of the governing board called for in the trust deed. Marie Stepp became treasurer and a board member of the Association. Associates' assets were transferred to the Association on May 22, 1994.

Disputes over the role and authority of the Association continued and a controversy developed over the selection of candidates for election to the Association's board in 1995. Apparently in connection with this controversy, some members of the Association asserted that there was no record of Stepp's selection as a substitute trustee. Ware was asked by the Association to submit a letter of resignation as trustee, which he did on May 31, 1995. A notation in the minutes of the December 15, 1995 board meeting indicates that "Carol Ann Wright has accepted the position of Trustee."[2]

On February 4, 1997, Stepp, both individually as a lot owner and as a trustee, Marie Stepp as a lot owner, and Ralph Edwards, both individually as a lot owner and "for the use and benefit of Belmont Bay Community Associates," and Patricia

---

[2]No formal action to record Wright's selection as a trustee was taken at this time. Subsequent to the initiation of the suit from which this appeal arises, a deed was filed naming Wright as successor trustee replacing Ware and naming Polifko as successor trustee replacing Lear.

Edwards as a lot owner, filed an amended bill of complaint against the Association, Foster and Lear, both individually and as trustees, and seven individual lot owners including Wright and Michael Polifko.[3]  In essence, the Stepps and the Edwardses sought a declaration that the Association was not the governing board of the trust called for by the February 24, 1973 trust deed, and that it lacked the power to enforce the collection of dues from lot owners.  They further sought a declaration that Wright was "not a duly appointed Trustee."  In addition, they sought an accounting of the funds collected by the Association and Associates, the removal of Foster and Lear as trustees, and damages from Foster and Lear for alleged breaches of their fiduciary duties.[4]

Characterized by the chancellor in her final opinion letter as a "firestorm," the proceedings in the trial court, culminating in a six and one-half day ore tenus hearing, reveal the extent to which the dispute over conflicting interpretations

_____

[3]The original bill of complaint had been filed on October 3, 1996.  The amended bill of complaint was filed in order to add additional lot owners as respondents in order to provide adequate notice to the beneficiaries of the trust.

[4]On April 11, 1997, in a preliminary hearing, the trial court granted partial summary judgment to Foster, Lear, and Wright, finding that the trustees did not have to act unanimously, but could act by majority vote.  The chancellor also found that the trust in question is "a charitable trust."

of the trust deed, the duties of the trustees under that deed, the authority of the community associations, and the rights of the individual lot owners had devolved into a bitter and acrimonious community feud.  For purposes of our resolution of this appeal, however, it is unnecessary to recount the full extent of the accusations and counter-accusations of the principal parties.  It will suffice to say that the Stepps, the Edwardses, and their supporters opposed the efforts to expand the role of the Association beyond the maintenance and use of Parcel A as a "park" and viewed these efforts as intended to primarily benefit Foster and Lear individually.  Foster, Lear, and their supporters maintained that these efforts were altruistic and were intended to benefit the entire community.

After the chancellor issued preliminary findings in their favor, Foster, Lear, and Wright (the trustees) filed a motion to recover the attorney's fees and expenses expended by them in defending the suit.  The trustees specifically sought to recover these fees and expenses personally from the Stepps and the Edwardses (the beneficiaries).

After receiving briefs from the parties, the chancellor issued a preliminary ruling.  In a letter opinion dated June 5, 1998, the chancellor recognized that, as an exception to the "American Rule" that attorney's fees and costs generally are not recoverable by a prevailing litigant, a trustee who is required

6

to defend in his capacity as trustee "without his own fault" is entitled to be reimbursed for attorney's fees and expenses incurred in the litigation. Willson v. Whitehead, 181 Va. 960, 965, 27 S.E.2d 213, 216 (1943). The chancellor, relying on Willson, accepted the trustees' argument that because "there is no trust fund within the control of the court but, rather, the trust is non-liquid realty," the burden of reimbursing the trustees should fall on the cestuis que trust, i.e., the beneficiaries who sued the trustees, personally.

After receiving briefs and exhibits from the parties, the chancellor held an ore tenus hearing to determine the reasonableness of the attorney's fees and "expenses" claimed by the trustees. In an opinion letter dated November 23, 1998, the chancellor found that the attorney's fees were reasonable and, after making minor adjustments to their claim for expenses and rejecting the beneficiaries' claim for offset for reimbursement received by Foster under his homeowner's liability policy, the chancellor awarded the trustees $158,343.50 in attorney's fees and $14,153.71 in "costs" against the beneficiaries personally.

Incorporating by reference the opinion letter dated the same day, a final decree dated November 23, 1998, confirmed the

7

award of attorney's fees and "expenses."[5]  In addition, the chancellor memorialized the findings of fact and conclusions of law made earlier in the proceedings.  Relevant to this appeal, the chancellor held that Stepp had been properly named as a substitute trustee, but had been removed and replaced by Wright, and that the current trustees are Foster, Wright, and Polifko.  The chancellor further held that no evidence supported a finding that Foster and Lear had breached their fiduciary duties as trustees or acted in bad faith.  Although the decree makes no express reference to the request for an accounting, it is clear by implication that this relief was denied.  We awarded the Stepps this appeal.

## DISCUSSION

The parties concentrated the majority of their argument on brief and the entirety of their oral argument on the issue whether an award of attorney's fees and expenses could be made against an unsuccessful beneficiary/litigant personally.  However, because a judgment in favor of the beneficiaries on the other assigned errors would necessarily render moot the

---

[5]Throughout the proceedings the parties and the chancellor use the terms "expenses" and "costs" interchangeably.  For reasons that we will subsequently address, the proper term in the context of this case is "expenses."

trustees' claim for attorney's fees and expenses, we will first address these assigned errors.

The Stepps have assigned error to the chancellor's findings that Mr. Stepp is no longer a trustee, that the trustees were not required to act unanimously, and that Foster and Lear had not breached their fiduciary duties as trustees. Additionally, the Stepps assign error to the chancellor's failure to order an accounting of Associates and the Association. Each of these challenges to the chancellor's judgment involves and is determined by a disputed issue of fact. When the chancellor hears evidence ore tenus, her decree is entitled to the same weight as a jury verdict, and we are bound by the chancellor's findings of fact unless they are plainly wrong or without evidence to support them. Rash v. Hilb, Rogal & Hamilton Co., 251 Va. 281, 283, 467 S.E.2d 791, 793 (1996). The record adequately supports the chancellor's findings of fact in favor of the trustees on each of these issues, and, accordingly, we will affirm the chancellor's judgment on them.

As framed by the Stepps, the remaining issue to be resolved is whether "[t]he trial court erred in entering a personal judgment against the Stepps in the amount of $172,497.21 as attorney's fees and costs awarded to Foster, Lear and Wright." For the reasons that follow, we hold that the award was proper,

9

but that the chancellor erred in not assessing that award against the trust.

The trustees' premise for seeking to have the chancellor assess the award against the beneficiaries rather than the trust is that assessing the award against the trust would require mortgaging or liquidation of the only trust asset, Parcel A, and, thus cause undue hardship on the other beneficiaries. Accordingly, they assert that "under the circumstances of this case, that right and entitlement requires that the reimbursement come personally from the Stepps." In support of this assertion, the trustees cite Willson and Cooper v. Brodie, 253 Va. 38, 480 S.E.2d 101 (1997). In neither case, however, was the award to the trustee charged to the beneficiary/litigant personally. Indeed, we expressly held in Cooper that "the trial court erred in charging a portion of Cooper's attorney's fees and [expenses] to her individual interest. . . . [T]hat portion should be charged to the trust." 253 Va. at 44, 480 S.E.2d at 104. (Emphasis added).

The trustees contend, however, that because the corpus of the trust is real property, there is no fund from which the chancellor could have ordered payment of the attorney's fees and expenses. They contend that this is so because the chancellor is without power to force the termination of the trust by ordering the sale of the real property as this would frustrate

10

the purpose of the trust.  Accordingly, they conclude that "the proper source of reimbursement is the Stepps."  We disagree.

Unquestionably, in Willson we recognized an exception to the "American Rule" that litigants bear the burden of their own expenses in litigation.  However, as we explained in Ward v. NationsBank, 256 Va. 427, 441, 507 S.E.2d 616, 624 (1998), "[t]he correct application of Willson is that a trustee, who has the duty to defend the actions challenged as detrimental to the trust, is entitled to attorney's fees when he has been called on to defend himself against a charge of dereliction of duty and there is neither substantial evidence that the trustee wasted or mismanaged the trust nor evidence of any conduct warranting the removal of the trustee. . . . [W]here a trustee has a good faith basis for defending a suit challenging his actions as trustee, attorney's fees and [expenses] incurred in the defense of the suit should be charged against the trust."  (Emphasis added.) See also Cooper, 253 Va. at 44, 480 S.E.2d at 104.

That the corpus of a trust consists of real property rather than liquid assets does not remove those assets from the control of the chancellor.  Nor is it controlling that an award of attorney's fees and expenses to a trustee who has successfully defended the interests of the trust might result in diminution of the corpus and thereby frustrate the grantor's intention. Nothing in our prior case law suggests such limitations on the

11

ability of the chancellor to make an award from the corpus of a trust, charitable or otherwise, reimbursing a trustee for expenses incurred in representing the trust.  Moreover, in the present case the record does not establish that making an award of the trustees' expenses from the trust corpus would necessarily terminate the trust as the trustees suggest.

There is no dispute here that because the trustees had a duty to defend the suit and the chancellor found no breach of their fiduciary duties, they are entitled to recover their expenses incurred in the defense of the suit.  As we previously noted in footnote 5, supra, the parties and the chancellor use the terms "expenses" and "costs" interchangeably.  To the extent that it might appear we draw no distinction between these terms in this case, a further discussion of the nature of the chancellor's judgment is necessary.

In this case, we are not concerned with an award of costs as contemplated by Code § 17.1-601, which provides, in part, that "the party for whom final judgment is given in an action or motion shall recover his costs against the opposite party."  Nor are we concerned with the distinctions we necessarily draw between costs essential for the prosecution of a suit, such as filing fees or charges for service of process, and incidental expenses incurred in an attorney's representation of clients in the form of expert witness fees, express mail service,

12

messengers, meals, law clerk temporaries, computer-based legal research, library research, photocopies, parking, taxicabs, telephone calls, and transcript preparation in appropriate cases. See Advanced Marine Enterprises v. PRC Inc., 256 Va. 106, 126, 501 S.E.2d 148, 160 (1998); see also Lansdowne Development Company v. Xerox Realty Corp., 257 Va. 392, 403, 514 S.E.2d 157, 163 (1999)(discussing award of "all litigation expenses" under contract).

While a portion of the chancellor's award in the present case reimburses the trustees for some of the items of expense listed above that we rejected in Advanced Marine, here we are not concerned with an award of what are commonly referred to as "court costs." Rather, we are concerned with "expenses" of trustees incurred in defending a suit brought against them by beneficiaries of the trust. In that context, we apply our holding in Willson as requiring that the trustees be held financially harmless in that "they ought not in justice and good conscience to be put to any expense out of their own moneys . . . [and] if it appears . . . that they have sustained charges and expenses beyond the costs of the suit, as between solicitor and client, the court will order such further expenses properly incurred to be paid to them." Willson, 181 Va. at 965, 27 S.E.2d at 216. Accordingly, here we are concerned with any reasonable expense of the trustees beyond and above their

13

attorney's fees, that they may have incurred as a result of being required to defend this suit.  In short, here the chancellor properly awarded expenses in the unique context of trustees defending a suit brought by beneficiaries of the trust so as to hold them financially harmless.[6]

CONCLUSION

For these reasons, we will reverse that portion of the chancellor's judgment making the beneficiaries personally liable for the attorney's fees and expenses awarded to the trustees, modify the judgment to place the liability for that award on the trust, and enter final judgment for the trustees.

Affirmed in part,
reversed and modified in part,
and final judgment.

---

[6]Moreover, because the amount of their expenses is not challenged on appeal, the trustees are entitled to recover those expenses as awarded by the chancellor's judgment.  We stress that our affirmance of the judgment in this case should not be interpreted as permitting an award of similar incidental expenses in a different litigation context.